EARL G. STUART & another *vs.* LEDYARD W. SARGENT.

Suffolk. March 10, 1933. — July 1, 1933.

Present: RUGG, C.J., WAIT, FIELD, DONAHUE, & LUMMUS, JJ.

*Corporation*, Dividend, Transfer of shares. *Uniform Stock Transfer Act. Equity Pleading and Practice,* Counterclaim, Agreed statement of facts, Drawing of inferences, Rule 32 of the Superior Court (1932). ` Rules of Court. Evidence,* Inference. *Words,* "Delivery."

The owner of shares of corporate stock indorsed his certificates in blank and delivered them to a stockbroker as security for a margin account and the stockbroker later, upon the owner's order, sold the shares and credited the proceeds upon the owner's account, which thus showed a balance in the owner's favor. The stockbroker did not deliver the certificates to the purchaser because his accounts with the purchaser were balanced without such delivery. A second customer of the stockbroker was entitled to receive from him a larger number of shares in the same corporation and the stockbroker segregated certificates representing that number of shares and put them away, marked with the name of the second customer, in a special box which also was marked with the name of that customer. Among the certificates thus segregated were the certificates formerly owned by the first customer. The stockbroker was adjudicated a bankrupt and, upon a reclamation petition, the segregated shares were delivered to the second customer and a new certificate therefor in his name obtained. In the interim, there having been no transfer on the books of the corporation, dividends had been paid to the first customer. In a suit in equity against the second customer by the first customer, claiming the shares, the defendant by counterclaim sought the amount of such dividends. The first customer waived his claim to the shares. Upon an appeal by the first customer from a decree, entered upon a case stated, sustaining the counterclaim, it was *held,* that

(1) The first customer, having transferred his stock, was not entitled to retain the dividends; they belonged to the real owner of the stock in the absence of contract to the contrary;

(2) The second customer, if entitled to the dividends, could claim

them by counterclaim under Rule 32 of the Superior Court (1932), and it was immaterial whether the right so set up by counterclaim was legal or equitable, where it arose out of the transaction which was the subject matter of the suit;

(3) Upon the facts stated this court inferred that the stockbroker intended, by the segregation of certificates and marking them as he did, not merely to express an intention to transfer in the future the particular certificates segregated and marked for the second customer, but rather to transfer presently to the second customer in accordance with his duty to him, so far as he could do so by the physical acts done and without further formality, all the title and interest in the certificates and shares and any dividend thereon which accrued after the second customer became entitled to receive the shares from him and to which he was entitled as against the first customer;

(4) Upon the facts so inferred, even if there was no delivery by the stockbroker sufficient to transfer legal title to the second customer, a transfer to the second customer of the equitable title to the shares and the dividends was shown;

(5) Under the counterclaim, the second customer was entitled to the dividends, and the decree was affirmed.

BILL IN EQUITY, filed in the Superior Court on October 11, 1932.

The pleadings are described in the opinion. The suit was heard by *Weed*, J., upon a case stated. Material facts so stated are described in the opinion. From a final decree sustaining the defendant's counterclaim, the plaintiffs appealed.

*D. Greer*, for the plaintiffs.

*R. S. Wilkins*, for the defendant.

LUMMUS, J. The plaintiffs having waived their claim, made in their bill, to fifty shares of stock of the American Telephone and Telegraph Company, the only question argued is whether the defendant can maintain his counterclaim, included in his answer under Rule 32 of the Superior Court (1932), for the amount of dividends received by the plaintiffs on that stock while it stood on the books of the corporation in the names of the plaintiffs.

The plaintiffs had a margin account with the banking and brokerage firm of Curtis and Sanger, and as security therefor the firm held two certificates of said stock, of forty-four shares and six shares respectively, in the names of the plaintiffs and indorsed by them in blank. So far as appears the plaintiffs owned no other stock in that com-

pany. Between September 15, 1931, and September 22, 1931, the firm sold for the account of the plaintiffs upon their order fifty shares of said stock for the net price of $7,091.38, which sum was then and still remains credited to the account of the plaintiffs, according to the books of the firm and to statements then sent to the plaintiffs. This credit extinguished the indebtedness of the plaintiffs to the firm, and gave the plaintiffs a net credit balance of $950.40. The firm never delivered the certificates to the purchaser, who like the firm was a member of the Boston Stock Exchange, because it was found that their accounts were in balance without such delivery. The firm, therefore, had the right to retain the fifty shares.

The defendant was entitled to receive from the firm one hundred twenty-five shares of stock of said company, among other securities, which had been bought by him in June, 1931, through the firm, and fully paid for. On September 24, 1931, the defendant directed the firm to have all the securities transferred into his name. As to the one hundred twenty-five shares, the firm did not have the shares transferred, but did segregate certificates of said stock to the amount of one hundred twenty-five shares and put them away, marked with the name of the defendant, in a special box which also was marked with the name of the defendant. Two of the certificates so segregated, marked and put away were the certificates in the names of the plaintiffs, already described.

Upon an involuntary petition, filed October 5, 1931, the firm was adjudicated bankrupt on October 19, 1931. On June 13, 1932, on a reclamation petition brought by the present defendant, the referee in bankruptcy, after an uncontested hearing, ordered said certificates turned over to the defendant, and this order was obeyed. Shortly after June 22, 1932, a new certificate including those fifty shares was obtained in the name of the defendant.

After the sale of the fifty shares at the order of the plaintiffs in September, 1931, and before the shares were transferred on the books of the company into the name of the defendant in June, 1932, dividends on those shares became

due, and were received by the plaintiffs, to the amount of $348.75. The final decree dismissed the plaintiffs' bill, and ordered the plaintiffs to pay that sum to the defendant with interest from July 16, 1932, the date of demand upon the plaintiffs, and the plaintiffs appealed. The plaintiffs claim no right to the dividends, but contend that no title to the certificates or the shares passed to the defendant until the delivery of the certificates to the defendant upon the order of the referee in June, 1932, and that the trustee in bankruptcy and not the defendant is the proper claimant of the dividends received in the meantime. It is asserted by the defendant in his brief, although the record does not disclose the fact, that the object of the plaintiffs in making this contention is to require a new action to recover the dividends, brought by the trustee in bankruptcy, and then to declare in set-off for the balance due to the plaintiffs from the firm. Whether such a set-off could be allowed is not before us. See Remington, Bankruptcy (3d ed.) §§ 1454, 1458.

The referee in bankruptcy, on the reclamation petition of the defendant, had authority to determine the title to the stock. *Weidhorn* v. *Levy,* 253 U. S. 268, 271, 272. *Daniel* v. *Guaranty Trust Co. of New York,* 285 U. S. 154. *MacDonald* v. *Plymouth County Trust Co.* 286 U. S. 263. *Mitchell* v. *Mitchell,* 59 Fed. Rep. (2d) 62, 65. The plaintiffs urge, however, that they are not bound by that adjudication because they were not parties to it, and, further, that it did not extend to the dividends. We need not consider whether a determination of the title to the stock on which the dividends accrued, made between the only possible claimants (the plaintiffs having abandoned their claim), can be ignored by the plaintiffs, who seek to attribute rights to the trustee in bankruptcy which the tribunal having jurisdiction over his rights has decided to be nonexistent. See *Hannaford* v. *Charles River Trust Co.* 241 Mass. 196; *S. C.* 248 Mass. 225. The present case can be rested on the merits of the original transactions, without reliance on *res judicata* or any cognate doctrine.

We assume that until the transfer of the stock to the

defendant was registered on its books, the corporation was entitled to pay dividends to the plaintiffs. G. L. (Ter. Ed.) c. 155, § 29 (a). New York Personal Property Law, § 164 (a). But the plaintiffs, having transferred their stock, were not entitled to retain the dividends received. Such dividends belonged to the real owner of the stock, in the absence of contract to the contrary. *Richter & Co.* v. *Light*, 97 Conn. 364. *Jermain* v. *Lake Shore & Michigan Southern Railway*, 91 N. Y. 483. *Hopper* v. *Sage*, 112 N. Y. 530. *Ford* v. *Snook*, 205 App. Div. (N. Y.) 194, affirmed 240 N. Y. 624. See also *Nutter* v. *Andrews*, 246 Mass. 224, 227; *Ward* v. *Blake*, 247 Mass. 430, 433; *Anderson* v. *Bean*, 272 Mass. 432, 444. *Union & New Haven Trust Co.* v. *Watrous*, 109 Conn. 268; note, 60 Am. L. R. 703. If the defendant in this case was entitled to the dividends, either at law or in equity, an action of contract upon a common count for money had and received to his use afforded the natural remedy. *Sherman* v. *Werby*, 280 Mass. 157, 160, and cases cited. When sued in equity for the stock, the defendant, if entitled to the dividends, could claim them by counterclaim under Rule 32 of the Superior Court (1932). It is immaterial, as it was with a cross bill under the earlier equity practice, whether the right set up by counterclaim is legal or equitable, where it arises out of the transaction which is the subject matter of the suit. *Francis* v. *Hazlett*, 192 Mass. 137, 144. *North British & Mercantile Ins. Co.* v. *Lathrop*, 70 Fed. Rep. 429. *Weathersbee* v. *American Freehold Land Mortgage Co.* 77 Fed. Rep. 523. *Howard* v. *Leete*, 257 Fed. Rep. 918. *Clifton* v. *Tomb*, 21 Fed. Rep. (2d) 893, 898.

The decisive question is, therefore, whether by the act of the firm in segregating the certificates and marking them with the name of the defendant, he acquired title to them and to the shares represented by them, either at law or in equity. The corporation was created by the laws of New York, but the certificates were in Massachusetts. The question which law governs a transfer in such case has been the subject of fairly recent discussion. *Direction der Disconto-Gesellschaft* v. *United States Steel Corp.* 300 Fed. Rep.

741, 745, affirmed 267 U. S. 22, 28, 29. *Guaranty Trust Co. of New York* v. *Fentress,* 61 Fed. Rep. (2d) 329, 333, 334. *Husband* v. *Linehan,* 168 Ky. 304; *S. C.* Ann. Cas. (1917 D) 954. See also *First National Bank of Boston* v. *Maine,* 284 U. S. 312. No difficulty on that score arises, however, because in both States the uniform stock transfer act has been adopted in identical terms in all material respects. G. L. (Ter. Ed.) c. 155, §§ 22–44, and especially the definitions of "Certificate" and "Shares" in § 26. New York Personal Property Law, §§ 162–185. *Barstow* v. *City Trust Co.* 216 Mass. 330, 334. *Boston Safe Deposit & Trust Co.* v. *Adams,* 224 Mass. 442, 446. *Casto* v. *Wrenn,* 255 Mass. 72, 75. *Lavien* v. *Norman,* 55 Fed. Rep. (2d) 91, 97. *Turnbull* v. *Longacre Bank,* 249 N. Y. 159, 165.

This case is treated as having been submitted upon an agreed statement of facts, and therefore this court on appeal in equity may draw the inferences of fact deemed by it to be proper, without regard to the inferences drawn by the court below. *Donahoe* v. *Turner,* 204 Mass. 274, 275. *Sanderson* v. *Norcross,* 242 Mass. 43, 44. *Glass* v. *Glass,* 260 Mass. 562, 563. *Perkins's Case,* 278 Mass. 294, 300. *Sewall* v. *Elder,* 279 Mass. 473, 476. We infer that the firm intended by what it did, not merely to express an intention to transfer in the future the particular certificates segregated and marked for the defendant, but rather to transfer presently to the defendant in accordance with its duty, all the title and interest in the certificates and shares, and any dividend thereon accrued after June, 1931, to which it was entitled as against the plaintiffs, that it could transfer by the physical acts done, without further formality. See *Goodhue* v. *State Street Trust Co.* 267 Mass. 28, 35, 36; *Hopkins* v. *Bronaugh,* 281 Fed. Rep. 799; *Lavien* v. *Norman,* 55 Fed. Rep. (2d) 91, 96, and cases cited.

By the uniform stock transfer act, G. L. (Ter. Ed.) c. 155, § 27, the firm, having the certificates indorsed in blank by the plaintiffs who appeared by the certificates to be the owners of the shares represented thereby, could transfer the legal title to the certificates and the shares by delivering the certificates to the defendant. "Delivery" is

defined as "voluntary transfer of possession from one person to another." § 26. No form of transfer of legal title without delivery is recognized by the uniform stock transfer act. See *Place* v. *Chaffee,* 251 Mass. 508. Interesting analogies may be found under the uniform sales act, which contains exactly the same definition of "Delivery." G. L. (Ter. Ed.) c. 106, § 65. But under the uniform stock transfer act there is no requirement of delivery for the transfer of an equitable title. G. L. (Ter. Ed.) c. 155, § 26, definition of "Title," § 27. See *Herbert* v. *Simson,* 220 Mass. 480; *Boston Safe Deposit & Trust Co.* v. *Adams,* 224 Mass. 442; *Leonard* v. *Boston Five Cents Savings Bank,* 278 Mass. 36. Even if there was no delivery sufficient to transfer the legal title to the defendant, the inference which we have already drawn from the agreed facts shows a transfer of the equitable title to the certificates, the shares, and any dividend accrued after June, 1931, to which the firm had a right. In substance, the firm declared itself a trustee for the defendant. Whatever may be the rule as to the creation of voluntary trusts (*Boynton* v. *Gale,* 194 Mass. 320, 323; *Supple* v. *Suffolk Savings Bank,* 198 Mass. 393, 396; *Cardoza* v. *Leveroni,* 233 Mass. 310; *Penn Mutual Life Ins. Co.* v. *Hunt,* 237 Mass. 241, 244), there is no principle of general application that knowledge or consent of the *cestui que trust* at the time is necessary to the validity of a declaration of trust. *Ward* v. *Lewis,* 4 Pick. 518, 521. *Boston* v. *Turner,* 201 Mass. 190, 194. *Wickwire Spencer Steel Corp.* v. *United Spring Co.* 247 Mass. 565, 569. *Martin* v. *Funk,* 75 N. Y. 134. *Cazallis* v. *Ingraham,* 119 Maine, 240.

*Decree affirmed with costs.*