194

Circuit Court of Appeals, First Circuit.
Nov. 5, 1936.

Samuel Harmon, of Boston, Mass., for appellant.

Edmund Burke, of Boston, Mass. (Lawrence E. Green and Hale & Dorr, all of Boston, Mass., on the brief), for appellees.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Massachusetts in favor of the defendants, in an action to recover the purchase price of 100 shares of the preferred capital stock of Rolls Royce of America, Inc., alleged to have been sold to the plaintiff by the defendants in violation of the Massachusetts General Laws (Ter. Ed.) c. 110A, § 1 et seq. known as the "Sale of Securities Act," or "Blue Sky Law."

According to the agreed statement of facts the plaintiff on July 12, 1927, purchased from the defendants 50 shares of the preferred stock of Rolls Royce of America, Inc., for $4,350; and on March 21, 1928, the plaintiff purchased 50 additional shares of the same stock from the defendants for the sum of $2,100.

On September 28, 1933, the plaintiff, having learned of what he considered defects in the statement filed with the Department of Public Utilities in compliance with section 4 of chapter 110A of the General Laws of Massachusetts (Ter.Ed.) for the purpose of qualifying said preferred stock for sale in the commonwealth of Massachusetts, tendered to the defendants the 100 shares of stock purchased by him and all dividends received with interest thereon, which tender, though proper in form, was refused by the defendants, whereupon this action was brought November 16, 1933.

By reason of the recent decision of the Supreme Court of Massachusetts in Norwood Trust Co. v. Twenty-Four Federal Street Corporation, 3 N.E.(2d) 826, 828, interpreting chapter 110A of the Massachusetts General Laws (Ter.Ed.) and sections 2 and 12 of chapter 260 of said General Laws (Ter.Ed.), plaintiff's counsel admits that the plaintiff is barred from the recovery of the purchase price of the stocks sold to him on July 12, 1927.

Section 2 of chapter 260 of the General Laws of Massachusetts (Ter.Ed.) provides that actions of contract founded upon contracts or liabilities, express or implied, shall be commenced only within six years next after the cause of action accrues.

Section 12 of said chapter 260 provides, however, that:

"If a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action."

The Massachusetts Supreme Court held in the above case of Norwood Trust Co. v. Twenty-Four Federal Street Corporation, supra, that:

"Following the same analogy of the statute of limitations, it is also immaterial that the plaintiff did not know of the illegality and of its potential cause of action until more than six years after its purchase of the bonds. * * * The mere failure of a wrongdoer to disclose his wrongdoing, where no fiduciary relation exists, is not a fraudulent concealment of the cause of action within G.L.(Ter.Ed.) c. 260, § 12."

█ The main question left, therefore, is whether under the interpretation of chapter 110A of the General Laws of Massachusetts (Ter.Ed.) by the Massachusetts Supreme Court the plaintiff is entitled to recover the purchase price of the 50 shares of preferred stock sold to him on March 21, 1928, his action having been brought within the six-year period of the statute of limitations, on the ground that the preferred stock of Rolls Royce of America, Inc., was not qualified for sale in Massachusetts under chapter 110A of the General Laws of Massachusetts (Ter.Ed.) known as the "Sale of Securities Act," or "Blue Sky Law," which provides as follows:

"Section 3. Except as hereinafter provided, the provisions of this chapter shall not apply to—* * *

"(e) Securities listed upon any stock exchange in Massachusetts which has been doing business continuously for the last ten years prior to the effective date of this chapter and all securities senior thereto, for six months from the effective date of this chapter. * * *

"Section 4. No security not exempted from the provisions of this chapter under the preceding section, that has been sold in this commonwealth prior to June first, nineteen hundred and twenty-one, shall be sold after six months following the effective date of this chapter or after such further time as the commission may prescribe, unless and until there shall have been filed with the commission by a person offering the same for sale or by the directors or trustees of the corporation, association, trust or other body issuing the security or other officers holding a corresponding relation thereto, or by officers duly authorized by such directors or trustees to take such action, a statement on such forms as the commission may prescribe, duly dated and sworn to by the person or officers subscribing and filing the same, containing the following information and data relative to the security to be offered and the person, corporation, association or trust issuing such security, to wit:

"(a) The names and addresses of the board of directors or other board of management, and of the president, treasurer, secretary, auditor, or corresponding officers of such corporation, association or trust;

"(b) The state or other sovereign power, under the laws of which the corporation, association or trust was organized, and a reference to such laws;

"(c) The purpose for which the corporation, association or trust was organized or formed and the general nature of the business to be transacted or in which it proposes to engage;

"(d) The capitalization thereof, including the authorized amount of its capital stock, the number and classes of shares into which such capital stock is divided, a description of the respective voting rights, preferences, rights to dividends, profits or capital of each class with respect to each other class, the amount of capital stock of each class issued or included in the shares of stock to be offered, the amount of the funded debt, if any, with a brief description of the date, maturity and character of such debt, and the security, if any, therefor;

"The commission may, to such extent as it deems reasonable, accept in lieu of such statement, a reference to recognized sources of information selected by the commission, containing such information and particulars as it deems sufficient.

"Section 5. No security not exempted under section three and to which the preceding section does not apply shall be sold unless and until there shall have been filed with the commission by a person offering the same for sale or by the directors or trustees of the corporation, association, trust, or other body issuing the security, or

by other officers holding a corresponding relation thereto, or by officers duly authorized by such directors or trustees to take such action, a notice of intention to offer for sale the security named and specified in the notice; but within seven days, or such further period as in any special case the commission may authorize, after filing said notice, the person or officers, or some one in their behalf, shall file with the commission a statement containing the information and data relative to the security offered and the issuing corporation, association or trust, specified in subdivisions (a), (b), (c) and (d) of section four, and in addition thereto a statement of the purposes to which the proceeds of the proposed issue are to be applied. Upon and after the filing of such notice the said security may be sold and offered for sale by any broker or salesman registered under the provisions of this chapter, subject, however, to the provisions of the following section and subject to the right of the commission in its discretion to forbid its sale until the information required by this and the following section is filed with it and the commission has revoked its action in forbidding its sale.

"Section 6. If, upon receipt and examination of the notice or of any statement required by the two preceding sections the commission deems the information inadequate it shall make such further investigation as it shall deem necessary or advisable, and may require from the person filing such statement or from any person or persons issuing such security such further information under oath, including examinations and reports by reputable accountants, engineers and other experts, at the expense of the person or persons aforesaid, as may in its judgment be necessary to enable it to ascertain whether the sale of such security would be fraudulent or would result in fraud. * * *"

It was admitted in the agreed statement of facts filed in the case that the preferred stock of Rolls Royce of America, Inc., was sold in the commonwealth of Massachusetts prior to June 1, 1921, therefore section 4 of chapter 110A applies to the sale of the preferred stock of Rolls Royce of America, Inc. If it desired to sell other securities not sold prior to June 1, 1921, it must qualify them under section 5 of said chapter 110A.

On April 1, 1926, the defendants filed a statement with the Department of Public Utilities of Massachusetts in accordance with the provisions of sections 4 and 5 of chapter 110A of the General Laws of Massachusetts (Ter.Ed.), which contained the information required by subparagraphs (a), (c) and (d) of section 4.

The plaintiff, however, contends that the statement did not comply with subparagraph (b) of section 4, which provides that the statement filed shall contain the following information relative to the securities to be offered and the person, corporation, association, or trust issuing such securities: "(b) The state or other sovereign power, under the laws of which the corporation, association or trust was organized, and a reference to such laws."

With reference to the information required under subparagraph (b), the statement filed contained the following: "The company, association or trust was organized under the laws of the State of Delaware (giving a reference to such laws) on the eighth day of October, 1919." The defendants contend that this was a sufficient compliance with the provisions of subparagraph (b) that the statement should contain "a reference to such laws."

If not, the defendants contend that section 6 of the act, supra, applies, which provides that if the Department of Public Utilities deemed the statement filed with it was inadequate as to information necessary to qualify the preferred stock in the commonwealth of Massachusetts, it had the right to demand further information, and since it did not do so, the Department must have accepted the reference to the General Laws of Delaware as a sufficient source of more particular information as to the laws under which the Rolls Royce of America, Inc., was organized. The right to sell said preferred stock never having been questioned or further information required by the Department of Public Utilities, the plaintiff after seven years should not be permitted now to claim that the preferred stock of said Rolls Royce of America, Inc., was not qualified for sale in Massachusetts.

It is also contended by the plaintiff that there was no notice of an intent to sell the preferred stock in the commonwealth of Massachusetts; that the only notice of a sale of any of the securities of the Rolls Royce of America, Inc., related to a notice to sell its 7 per cent. gold bonds.

No question is involved in this case as to the right to sell the bonds of the compa-

ny; but the defendants having filed a statement giving the requisite data and information required by sections 4 and 5 of said chapter 110A as to both stock and bonds, gave notice of their intent to offer for sale certain bonds which were "not exempted under section 3 and to which the preceding section (4) does not apply."

It is clear from an examination of section 4 of the act that, where securities had been sold in the commonwealth of Massachusetts prior to June 1, 1921, as in case of the preferred stock of the Rolls Royce of America, Inc., no notice of further intent to sell was necessary if a statement complying with section 4 was filed with the Department of Public Utilities. The statement filed did in fact provide that "the capital stock of each class issued or included in the shares of stock *to be offered* is as follows: Common, 35,000 shares; preferred, 35,000 shares." (Italics supplied.)

The case of Doherty v. McAuliffe (C. C.A.) 74 F.(2d) 800, which involved a construction of section 8 of chapter 110A of the General Laws of Massachusetts (Ter. Ed.), has no application to the facts in this case. The judgment of the District Court, therefore, is affirmed upon the ground that there was a substantial compliance with section 4 of said chapter 110A.

The judgment of the District Court is affirmed, with costs of this court.