CITY OF NEW BEDFORD *vs.* LLOYD INVESTMENT
ASSOCIATES, INC.; FRANCIS J. LAWLER & others,
third-party defendants.

Bristol. December 7, 1972. — February 14, 1973.

Present: TAURO, C.J., BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Limitations, Statute of. Municipal Corporations,* Statute of limitations. *Contract,* Implied contract. *Payment. Mistake. Words,* "Personal action," "Accrues."

An action by a municipality, even if brought in the municipality's public capacity, is subject under G. L. c. 260, §§ 2 and 18, to the statute of limitations for "personal actions." [117]

"Personal" is used in G. L. c. 260, § 18, as in the classic division of actions into personal, real, and mixed. [117–118]

The statute of limitations on an action for recovery of money paid by mistake, despite the action's antecedents in equity, begins to run when the money was paid rather than when the mistake was discovered. [118–122]

CONTRACT. Writ in the Superior Court dated January 15, 1970.

The action was heard by *Chmielinski,* J., on a motion for judgment on undisputed facts.

*Barney Papkin,* Assistant City Solicitor, for the City of New Bedford.

*Stephen A. Hopkins* for Lloyd Investment Associates, Inc.

KAPLAN, J.   The plaintiff city of New Bedford appeals from an order granting a motion by the defendant Lloyd Investment Associates, Inc., under G. L. c. 231, § 59, for judgment on undisputed facts.   The ground of the motion and judgment was that the action was barred by G. L. c. 260, § 2, as appearing in St. 1948, c. 274, § 1, the six-year statute of limitations applicable to "Actions of contract," as defined.

The plaintiff city's declaration, in two counts, was in substance as follows.   In 1956–1957 the city took the necessary steps by means of "loan orders" Nos. 1 and 2, adopted by the city council and approved by the mayor, to authorize the sale of bonds to borrow amounts for the purposes, respectively, for which the city was empowered to incur debt by G. L. c. 44, § 7 (5) (as amended through St. 1951, c. 282, § 1), and § 7 (1) : "For the original construction of public ways or the extension or widening thereof . . ." and "For the construction of sewers for sanitary and surface drainage purposes and for sewage disposal . . .."   Within these statutory purposes, the borrowings were intended for the development of the city's new "industrial park."   Some $1,434,000 was raised by the sale of bonds from 1958 to 1961.   The defendant corporation [1] was organized as a realty and investment company to acquire land in the park from the New Bedford Industrial Foundation and to finance the construction of buildings therein for occupation by firms desiring to locate themselves in the city.   From July, 1959, to August, 1960, the city issued five checks, totalling $100,978, against the proceeds of loans Nos. 1 and 2, payable to the defendant, representing reimbursement for expenditures for construction work at the park.   It is

---

[1] Actually a predecessor corporation called North Bedford Realty Corporation.

alleged that these payments were for purposes other than those set out in G. L. c. 44, § 7 (1) and (5) ; that they were made without contractual obligation therefor and for improvements to private property at the park owned by the defendant or by or for the benefit of the defendant's tenants there.   The commissioner of public works had not certified the expenditures as required by the loan orders.   The declaration alleges that the payments were approved by the mayor and made by the city officials without knowledge that they were for unauthorized purposes and in the mistaken belief that they were authorized as improvements along a city easement adjacent to the public ways constructed at the park.   By reason of the mistake, the defendant has received moneys which in equity and good conscience it should repay to the city, wherefore the corporation owes the city the stated sum with interest from the date of the writ.   A second count for the same cause of action alleges that the defendant owes the city this amount as money had and received to the city's use as shown in the bill of particulars annexed, itemizing the five checks.   The writ in the action was dated January 15, 1970.

The defendant's answer, in addition to denials, pleaded a number of defences including the running of the statute of limitations for actions of contract.   After answer, the defendant demurred to the declaration on the grounds, among others, that the declaration did not state a cause of action, and that the statutory period had run before the commencement of the action.[2]   The judge overruled the demurrer.   He said the declaration stated a cause of action; the statute of limitations was not rendered inapplicable because the plaintiff was a municipality; but, as the cause of action was "equitable in nature," the statutory period did not begin to run until the illegality was or should have been discovered, which the judge evidently took to be at some date within six

---

[2] The parties had agreed that the limitations issue should be decided on demurrer.   Cf. G. L. c. 231, § 18.

years preceding the commencement of the action.

Following the overruling of its demurrer, the defendant took the deposition of one William S. Mahoney, whom the defendant had impleaded in the action as a third-party defendant together with others.[3]   See G. L. c. 231, § 4A.   Mahoney had served as senior bookkeeper and assistant city auditor at the time of the payments, was familiar with them, and furnished various circumstantial details about the procedures leading to the actual disbursements by the city treasurer.   Mahoney said that before the city auditor's office sent in the warrant covering the first payment of $13,500 to the defendant, he had questioned whether it was for an authorized purpose. The particular invoice was in the form of a letter from a contractor to the defendant concerning a named manufacturing plant at the park; the letter presented "a breakdown of the cost of the Site Development" as follows: clear and grub site, $2,000; site utilities, including plumbing, septic tank, oil tank, and sanitary drain, $7,500; paving, $4,000.   (The $13,500 payment was ultimately charged to "Streets," loan No. 1.)   Mahoney said he consulted the mayor and was told in effect that the city did not have the manpower to do the work needed to tie the newly constructed plants into the city's streets and sewerage facilities at the park, and accordingly the contractors were doing this work.   Mahoney was reassured and did not question the four later invoices.[4]

---

[3] The others impleaded were the mayor and two city auditors who were in office during the period of the payments. The third-party declaration is in two counts. The gravamen of the first count is that the third-party defendants negligently represented to the defendant (third-party plaintiff) that the payments were within the authority of the loan orders, and the defendant relied thereon; the second count charges that the representations relied on were known by the third-party defendants to be false; the defendant concludes that if it is held liable to the plaintiff, the third-party defendants will be correspondingly liable to it.

[4] The second invoice, for $19,000, chargeable to "Streets" (loan No. 1), was stated to be for "Site improvements necessary to make land usable for erection" of another plant; the third invoice, for $34,850, was stated to be for the same purpose at that plant, chargeable to "Sewerage" (loan No. 2); the fourth invoice, for $18,250, chargeable to "Streets" (loan No. 1), was stated to be for the same

Mahoney did not consider certification by the commissioner of public works to be important since the mayor, whose approval of the expenditures was required by the loan orders, did in fact give his formal approval.

Counsel for the defendant moved for judgment on undisputed facts, on the ground that the action was barred by time limitations. He annexed the Mahoney deposition to his supporting affidavit.[5] The plaintiff did not submit any affidavit or other material in opposition. The judge — not the same judge who had overruled the demurrer — granted the defendant's motion. He said that, though governed by equitable principles, the action was one at law on a common count for money had and received as paid by mistake. In such a case the period under the "contract" limitations statute ran from the time the money was received, even though the mistake was not discovered until later. The statute might be tolled for fraudulent concealment (see G. L. c. 260, § 12), but "it is conceded by the parties in the instant case that there has been no fraud and no concealment of the true facts." Judgment was entered accordingly for the defendant.

It will be observed that the Mahoney affidavit is consistent with the declaration and furnishes particularized confirmation of its allegations including the dates involved. Read in the strongest light against the city officials, as it should be on the motion for judgment, the deposition shows a course of irregularities or neglects eventuating in payments at least some of which can be taken to have been made for unauthorized purposes. The city officials, however, are not shown to be chargeable with anything graver than a mistake as to the authorization for the payments. Thus, in holding for the

---

purpose at that plant, but showed a breakdown: drainage pipe, $13,750; well system, $4,500. The fifth invoice, for $15,378, chargeable to "Streets" (loan No. 1), was stated to be for "Site Improvements at Industrial Park."

[5] Mahoney, as a third-party defendant, would be free of liability to the defendant (third-party plaintiff) if the plaintiff could not maintain the action against the defendant.

defendant, the judge who passed on the motion for judgment was simply declining to follow the first judge on the point of law, as he was entitled to do.[6]

On its appeal the plaintiff recognizes that it is attempting to recover payments made by mistake without any intimation of fraud on either side. It argues, first, that as a political subdivision of the Commonwealth suing as plaintiff on the present cause of action it is not subject to the statute of limitations. General Laws c. 260, § 18, declares: "The limitations of the preceding sections of this chapter, and of section thirty-two so far as applicable to personal actions, shall apply to actions brought by or for the commonwealth." This section has long been understood to expose municipalities as well as the Commonwealth to limitations, on the common-sense view that municipalities were not intended to be favored in this respect over the Commonwealth itself. *Boston* v. *Nielsen,* 305 Mass. 429, 430–431. The plaintiff, however, says that this is not a "personal" action; it is not directed to vindicating a private or proprietary interest of the city, but is rather brought in the city's public or governmental capacity. But "personal," as it appears in § 18, means something quite different. That word is related to the first subtitle of c. 260, "Limitation of Personal Actions," covering the first twenty sections of the chapter; the first subtitle contrasts with the next, "Limitation of Real Actions and Rights of Entry," covering §§ 21–31A; and with another subtitle, "Limitation of Mortgage Foreclosures," covering §§ 33–35.[7] "Personal" is here being used in a sense resembling that in which it is used in the classic common-law division of actions into personal, real, and mixed, see Stephen, A

---

[6] While the second judge was under no duty to reconsider a question passed on by the first, he was not without power to do so. See the discussion of "law of the case" in *Peterson* v. *Hopson,* 306 Mass. 597, 599–605.

[7] Section 32, referred to in § 18, is entitled "Extension of time in case of abatement" and deals with a period of grace for commencement of a second action when the original action abates for certain reasons such as failure of sufficient service of a writ by reason of unavoidable accident.

Treatise on the Principles of Pleadings in Civil Actions (Williston ed. 1895), *3-*6; it has nothing to do with a private-public, or proprietary-governmental dichotomy. The plaintiff has been misled by those cases in some other States, of which it cites a few examples,[8] that do hold to such a distinction for limitations purposes. But the States in question do not have statutes like our § 18; they have evolved the distinction in an effort, at least with respect to "proprietary" claims of political subdivisions, to restrain and limit the old doctrine that time does not run against the sovereign. See Annotation, 113 A. L. R. 376.

The plaintiff city is thus to be treated as amenable to the statute of limitations. And it is clear that the statute as to actions of contract, more particularly the language about "implied" contracts,[9] extends to actions to recoup money paid to the defendant under conditions, such as mistake, giving rise to an obligation in equity and good conscience to refund. Such duties have long been thought of as contractual although there is no agreement in fact by the defendant to repay, because, as shown by the famous case of *Moses* v. *Macferlan*, 2 Burr. 1005, 1008, 97 Eng. Rep. 676, 678 (K. B. 1760), they could be enforced in the form of action called general assumpsit; the duties were and still are considered quasi contractual. The present declaration indeed recites the old formula of the common count for money had and received in general assumpsit. As a matter of substance, moreover, it makes no difference in the present case whether

---

[8] *New Haven* v. *Torrington*, 132 Conn. 194. *Clare* v. *Bell*, 378 Ill. 128. *Chicago & No. Western Ry.* v. *Osage*, 176 N. W. 2d 788 (Iowa). *Gloyd* v. *Talbott*, 221 Md. 179. *Goldberg* v. *Howard County Welfare Bd.* 260 Md. 351. *Board of County Com'rs Oklahoma County* v. *Good Township in Harper County*, 188 Okla. 151. *State ex rel. Nesbitt* v. *Western Sur. Co.* 494 P. 2d 1242 (Okla.). *Erny's Estate*, 337 Pa. 542.

[9] General Laws c. 260, § 2, reads: "Actions of contract, other than those to recover for personal injuries, founded upon contracts or liabilities, express or implied, except actions limited by section one or actions upon judgments or decrees of courts of record of the United States or of this or of any other state of the United States, shall, except as otherwise provided, be commenced only within six years next after the cause of action accrues."

the mistake is viewed as being more a mistake of law than of fact, or the other way around. *Dunne* v. *Fall River*, 328 Mass. 332, 336 (illegal payment by municipality). Restatement: Restitution, § 46 (a).

The controlling § 2 measures the six years from the time when the cause of action "accrues" but does not itself define accrual. Decisions of this court settle the point that in actions to recover mistaken payments of money the cause accrues upon the receipt of payment without regard to when the mistake is discovered. *Sturgis* v. *Preston*, 134 Mass. 372. *State Natl. Bank* v. *Beacon Trust Co.* 267 Mass. 355. *Stoneham Five Cents Sav. Bank* v. *Johnson*, 295 Mass. 390, 395. *Marinucci Bros. & Co. Inc.* v. *Commonwealth*, 358 Mass. 806. Cf. *Norwood Trust Co.* v. *Twenty-Four Fed. St. Corp.* 295 Mass. 234, 237; *Morse* v. *Noyes*, 86 F. 2d 194 (1st Cir.).

The judge, however, who acted on the demurrer noted that the cause was "equitable in nature," and the judge on the motion for judgment said it was "governed by equitable principles"; to the former judge this involvement with equity meant that the usual rule did not apply and time of discovery was the proper date of accrual. The plaintiff makes a like contention. It is true that mistake was a head of equity jurisdiction from an early date, and presumably that jurisdiction was not extinguished but rather became concurrent when the law courts began to deal with the same subject matter. In fact, in this Commonwealth it was indicated within the relatively recent past that a plaintiff might elect between a bill in equity and a declaration for money had and received. *Boston* v. *Santosuosso*, 298 Mass. 175; *S. C.* 307 Mass. 302. *George Lawrence, Inc.* v. *Brodie*, 302 Mass. 557, 559. Cf. *Parkway, Inc.* v. *United States Fire Ins. Co.* 314 Mass. 647, 651. This election may still have some consequences, for the Commonwealth has not yet taken the decisive step of completely unifying or fusing law and equity. But the election would not affect the running of the statute of limitations: granting the equitable ancestry of the plaintiff's cause of action, and as-

suming even that the plaintiff had brought and could maintain an equity bill on the present facts, the contract statute of limitations would still apply and the six years would still run from the time of receipt of payment. *State Natl. Bank* v. *Beacon Trust Co.* 267 Mass. 355, 359. That the limitation statutes should apply equally to similar facts regardless of the jurisdiction invoked, is intrinsically a sound proposition; the proposition has also been explained in historical terms by the fact that limitation statutes were enacted in the Commonwealth before the Legislature had abandoned its hostility to the idea of a jurisdiction in equity — before we had here such a thing as a bill in equity. *Ballentine* v. *Eaton,* 297 Mass. 389, 394, and cases cited. *State Natl. Bank* v. *Beacon Trust Co.* 267 Mass. 355, 359–360. *Stoneham Five Cents Sav. Bank* v. *Johnson,* 295 Mass. 390, 395. *Kagan* v. *Levenson,* 334 Mass. 100, 103. See Walsh, The Growing Function of Equity in the Development of the Law, in 3 Law: A Century of Progress 139, 150–154 (1937).

There are indeed some decisions on bills in equity to correct mutual mistakes and restore an anterior agreement between the parties, in which the cause of action has been considered to accrue at the time of discovery of the mistake. In *Gould* v. *Emerson,* 160 Mass. 438, there was an agreement for dissolution of a partnership upon which, through a plain shared mistake, a note was given by one partner to the other in an excessive amount, and the maker made part payments thereunder which were themselves excessive. In a suit to compel a surrender of the note and a return of the excess amount paid, limitations was pleaded but the defence did not succeed because the period was measured from the time of discovery. This decision — which may have rested on the formal distinction between equity and law before that factor was clearly seen to be irrelevant — has been treated with impatience by one court, *State Natl. Bank* v. *Beacon Trust Co., supra,* at 360, and by another court with puzzlement, *Stoneham Five Cents Sav. Bank* v. *Johnson, supra,* at 395–396. But support can also be found in

later cases for the view that a cause of action for reformation for mutual mistake dates from discovery. See *Bowker* v. *Torrey*, 211 Mass. 282, 287; *Stoneham Five Cents Sav. Bank* v. *Johnson, supra*, at 395–396; *American Oil Co.* v. *Cherubini*, 351 Mass. 581, 588. Such cases make a special appeal, as Professor Dawson has written, Mistake and Statutes of Limitation, 20 Minn. L. Rev. 481, 486–495; the defendant will typically be hard put to offer persuasive resistance to the postponement of the running of the statute, when the effect is merely to enable the court to restore the transaction by means of a reformation to its true basis, on which the defendant and the plaintiff were both agreed.[10] The case for the defendant is stronger where there is simply a mistaken payment without the other elements; here the defendant can more readily assert a justifiable reliance on the closed transaction after a considerable lapse of time. The *Gould* case and its emanations can thus be reconciled with the other precedents, and the total condition of our law probably corresponds with that of other jurisdictions whose statutes do not refer explicitly to date of discovery.[11] See Dawson, *supra;* Developments in the Law — Statutes of Limitations, 63 Harv. L. Rev. 1177, 1213–1214.

It is worth emphasizing that we deal perforce with the case as presented by the parties. Upon the undisputed facts in the present state of the record we conclude that the defendant is entitled to judgment because the statutory period has run. It matters not that the case might

[10] There are also cases which, quite understandably, start the time for suit running from the date of discovery where a beneficiary claims against a trustee of an express trust who has repudiated his trust, or, perhaps more generally, where one is entitled to an accounting from a fiduciary and the fiduciary accounts improperly. *Kearney* v. *Mechanics Natl. Bank*, 343 Mass. 699. *Attorney Gen.* v. *Trustees of Boston Elev. Ry.* 319 Mass. 642, 667–670. Cf. *Robertson* v. *Hirsh*, 276 Mass. 452, 453–454.

[11] Some State statutes provide expressly that in mistake cases the period of limitations shall run from discovery. See, e.g., California Code of Civil Procedure, § 338 (4): "An action for relief on the ground of fraud or mistake. The cause of action in such case [is] not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." (The prescribed period here is three years.)

be different if the city were making and could prima facie substantiate a more serious accusation than that of mistake on the part of its officials committed a decade before the time of commencement of the action.

*Order allowing motion for judgment affirmed.*