William H. BRINE, Jr., Administrator
DBN of the Estate of Francis H.
Swift, Plaintiff, Appellant,

v.

PAINE WEBBER, JACKSON &
CURTIS, INCORPORATED,
Defendant, Appellee.

No. 84–1114.

United States Court of Appeals,
First Circuit.

Argued June 6, 1984.

Decided Sept. 28, 1984.

David D. Patterson, Boston, Mass., with whom Albert F. Cullen, Jr., and Cullen & Wall, Boston, Mass., were on brief, for plaintiff, appellant.

Dwight W. Quayle, Boston, Mass., with whom William L. Patton, and Ropes & Gray, Boston, Mass., were on brief, for defendant, appellee.

Before COFFIN, Circuit Judge, STEWART,* Associate Justice (Retired), and BREYER, Circuit Judge.

STEWART, Associate Justice (Retired).

Francis H. Swift (Swift) died in September, 1923. His estate is still being administered. In this case we are called upon to decide whether the estate's claim for the recovery of certain dividends alleged to have been paid to the defendant, Paine, Webber, Jackson & Curtis, Inc. (Paine Webber), is barred by Massachusetts' six-year statute of limitations for contract actions. Mass.Ann.Laws ch. 260, § 2 (Law. Co-op.1980). The district court held that the estate's claim for dividends paid before October 3, 1973 is so barred, and the administrator, Brine, appeals.

## I

■ Because this appeal is from a partial grant of Paine Webber's motion for summary judgment, the facts and inferences drawn therefrom must be viewed in the light most favorable to Brine. *Emery v. Merrimack Valley Wood Products, Inc.,* 701 F.2d 985, 986 (1st Cir.1983). In this case, the parties stipulated to most of the relevant facts, and the others detailed below are uncontested.

For some years prior to 1923, Francis Swift had a trading account with the defendant's predecessor, Jackson & Curtis (J & C). In 1919 Swift, J & C, and several other individuals formed a syndicate to purchase stock in the Covert Gear Co., Inc. To carry out this purchase, the syndicate borrowed money from the First National Bank of Boston (First National). Swift was a guarantor of the syndicate's obligation to First National, as were the other syndicate members.

In December of 1922, Swift wrote to J & C and directed it to close his account. He requested that J & C "send a balance cheque to me," but noted that "[i]t is understood that you will retain what is necessary to cover the Covert Gear Matter." J & C followed these directions, selling all of Swift's stock except for 136 shares of common stock in the Flintkote Company and certain shares of stock in the Union Oil Company of Delaware. J & C retained $11,500 in cash and these shares to "cover the Covert Gear Matter" and sent Swift a check for the balance $17,000.

Swift died in 1923. Vallie Swift, his widow, was appointed administratrix of his estate. Two years later, First National brought suit in Massachussets' Suffolk County Superior Court against Swift's estate and J & C to recover on Swift's obligation as a guarantor of the loan to the syndicate. First National prevailed in the lawsuit, and J & C was ordered to make good Swift's obligation to the bank. J & C was able to satisfy this obligation without selling the Flintkote shares (the original shares). Consequently, after paying Swift's obligation to First National, J & C endorsed the original shares in blank and delivered them to the estate in July 1928.

The transfer of the original shares, however, was never recorded on the book's of Flintkote's transfer agent, and Vallie Swift died in 1932 without completing administration of her husband's estate. Because J &

* Of the Supreme Court of the United States, sitting by designation.

C's name remained on the books of Flint-kote's transfer agent as record owner of the shares, J & C continued to receive dividends paid on Swift's stock after July 1928. Also, in December 1928, Flintkote paid a 100% stock dividend to its shareholders, thereby adding 226 shares (the dividend shares) to Swift's Flintkote holdings.[1]

Not until 1977, for reasons unexplained in the record, was Brine appointed as the new administrator of Swift's estate. Brine discovered the erroneous payment of dividends on Swift's stock to J & C, and on October 5, 1979, he filed this diversity action, seeking recovery of dividends and interest on the original and the dividend shares. Because Paine Webber had already delivered all dividends that had accrued on the original shares between 1946 and 1973 to the state of New York pursuant to that state's abandoned property law, the complaint sought recovery only for dividends that had accrued from 1928 to 1946 and after 1973. The complaint alleged numerous theories of recovery, including breach of contract, breach of fiduciary duty, unjust enrichment, negligence, and conversion. Paine Webber moved for summary judgment on all counts, arguing that the action was time-barred. Brine then cross-moved for summary judgment on all counts except the negligence and conversion claims.

The district court agreed with Paine Webber that the negligence and conversion claims were time-barred, and that ruling has not been challenged in this appeal. In addition, the court concluded that Brine's remaining claims for cash and stock dividends issued prior to October 5, 1973, (for convenience, pre-1973 dividends), were barred by Massachusett's six-year statute of limitations for implied contract actions. The court accepted *arguendo* Brine's theory that, under Massachusetts law, if J & C had held the Flintkote securities for Swift and his estate in a fiduciary capacity, and if J & C had subsequently breached its fiduciary duty, then the statute of limitations would have been tolled until Brine had discovered the breach. The court concluded, however, that there had been no fiduciary relationship "[a]t the time the stock was delivered" to Swift's estate. As a result, the claims for the pre-1973 dividends were barred and the court granted Paine Webber's motion as to those dividends. As to dividends paid after October 5, 1973, (for convenience, post-1973 dividends), however, the court ruled that Brine's claim was timely filed within the six-year limit. The Court consequently granted judgment for Brine on those dividends, and Paine Webber has not appealed from that ruling. In a subsequent memorandum the court also made it clear that, because Brine's claim for pre-1973 dividends on the original shares was time-barred, any claim to dividends paid on the dividend shares was also barred, the dividend shares themselves being part of the time-barred claim. Only post–1973 dividends paid on the original shares were recoverable.

## II

The parties agree that Massachusetts law governs this diversity action. In Massachusetts, if funds have been paid to the wrong party by mistake, the proper action for recovery is one of quasi-contract based on "money had and received." *New Bedford v. Lloyd Investment Assoc., Inc.,* 363 Mass. 112, 118, 292 N.E.2d 688, 691 (1973); *Stuart v. Sargent,* 283 Mass. 536, 540, 186 N.E. 649, 650 (1933). Such an action is normally subject to Massachusetts' six-year statute of limitations for contract actions, and the six-year period is calculated to run from the date of "receipt of payment without regard to when the mistake is discovered." *New Bedford, supra,* 363 Mass. at 119, 292 N.E.2d at 692.[2]

---

1. The parties disagree as to whether J & C ever actually received these dividend shares. Our decision with regard to the statute of limitations makes resolution of this question unnecessary.

2. Prior to 1948, Section 2 of chapter 260 of Massachusetts' General Laws provided as follows:

   *§ 2. Limitation of Six Years* —The following actions shall, except as otherwise provid-

Thus, absent some special circumstance, it was entirely proper for the district court to hold that any claims to dividends received by J & C more than six years prior to institution of this lawsuit were time-barred.

■ Brine contends that such a special circumstance arose from Swift's 1922 letter to J & C. He argues that an express trust was created by the letter, and that J & C subsequently held Swift's Flintkote stock as a fiduciary. Massachusetts' settled rule in such a case is that a "statute of limitations does not begin to run in favor of a trustee against a beneficiary until the trustee has repudiated the trust and knowledge of that repudiation has come home to the beneficiary." *Kearney v. Mechanics National Bank of Worcester,* 343 Mass. 699, 703, 180 N.E.2d 667, 670 (1962). Thus Brine argues that the six-year limitation should have been tolled until 1977 when Brine discovered that Swift's dividends had been erroneously paid to J & C, which discovery he contends constituted the estate's first knowledge of repudiation of the alleged trust.[3]

We think it is likely correct, as the district court ruled, that a simple stockbroker-customer relationship is not a fiduciary one in Massachusetts. *See Plumer v. Luce,* 310 Mass. 789, 795–96, 39 N.E.2d 961, 964–65 (1942). But Brine does not rest on that relationship alone. He points to Swift's 1922 letter directing J & C to retain funds belonging to Swift sufficient "to cover the Covert Gear matter." J & C subsequently did retain Swift's funds, and Brine contends that this created an express trust as a matter of law. Brine further argues that the district court held to the contrary, and

that this holding should be reversed as clearly erroneous.

An express trust may well have been created in this case. *See Carpenter v. Suffolk Franklin Savings Bank,* 362 Mass. 770, 777–78, 291 N.E.2d 609, 614–15 (1973). Based on our ruling below, however, we need not resolve that question here. It is not clear from the district court's Memorandum Opinion that it held that an express trust was *never* created between Swift and J & C. The district court stated only that *"[a]t the time the stock was delivered to the estate* there were no special circumstances" indicating a fiduciary relationship (emphasis supplied). This statement can be fairly read as a statement of the holding that Paine Webber now suggests: "[w]hatever obligations Jackson and Curtis owed the Swift estate, fiduciary or otherwise, were discharged" in July 1928 when J & C endorsed and delivered the original shares to the Swift estate. With this we agree.

The terms of the 1922 letter are clear: J & C was to apply Swift's funds, and stock if necessary, to "cover" Swift's guarantee to First National on the Covert Gear matter. Indeed, Judge Keating of the Suffolk County Superior Court, on whose opinion Brine places great reliance, found as follows on this question in 1925 (emphasis supplied):

I find and rule that Jackson & Curtis have so far carried out the understanding between Swift and them as expressed in Swift's letter of December 27, 1922, [and] that *nothing remains to be done except* to pay to [First National] what is due to it, and *to deliver the*

---

ed, be commenced only within six years next after the cause of action accrues:

First, Actions of contract founded upon contracts or liabilities, express or implied, ...
Second, Actions of tort.
Third, Actions of replevin.
The 1948 amendment did not alter the substance of this limitation. It merely reduced the period of limitation to three years for actions of tort, replevin, and contract to recover for personal injuries. *See* Mass.Ann.Laws ch. 260, §§ 2 & 2A, pp. 429–30, 441 (Michie/Law. Co-op. 1980).

3. Brine's case can succeed, if at all, only on a theory of express trust. We have previously noted that, under Massachusetts law, a statute of limitations is not tolled with regard to court-imposed or created trusts, regardless of "repudiation". *Burns v. Massachusetts Institute of Technology,* 394 F.2d 416, 419 (1st Cir.1968). Brine's arguments concerning resulting and constructive trusts, therefore, are ineffective in this case, and we do not further address them.

*balance to the defendant Vallie G. Swift, administratrix ....*

▇▇▇ This contemporary state court ruling as to the terms of the 1922 understanding, in a case in which Swift's estate was a defending party, carries a strong collateral estoppel effect here. *Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979).[4] Moreover, based upon our independent review of the record, we agree entirely that such terms were all that the parties intended for any trust created by Swift's letter. And it is clear that the intentions of the settlor are controlling with regard to "the end to be accomplished" by a trust. *Carpenter v. Suffolk Franklin Savings Bank, supra*, 362 Mass. at 777, 291 N.E.2d at 614; *see Claflin v. Claflin*, 149 Mass. 19, 20 N.E. 454 (1889).

▇▇▇ The general rule is that a trust is terminated once its purposes have been accomplished. Bogert & Bogert, *The Law of Trusts* §§ 149 & 150, at 536–39 (5th ed. 1973); 4 *Scott on Trusts* § 334, at 2642 (3rd ed. 1967); 2 *Restatement (Second) of Trusts* § 334 & comment b (1959). Once a trust is terminated, the trustee has the continuing power and obligation only to preserve the trust property while winding up the trust and to deliver any remaining trust property to the beneficiary. The trust terminates entirely once conveyance occurs. Bogert, *supra*, at 536, 538; Scott, *supra*, §§ 344, 345, at 2735, 2738; 2 *Restatement (Second), supra*, § 344 (com-

ments c & h) and § 345 & comments c & d. Massachusetts appears to follow these general rules. *See Rothwell v. Rothwell*, 283 Mass. 563, 570, 186 N.E. 662, 665 (1933) (trust "terminates upon conveyance" of trust property; "duties and powers of the trustee" related to conservation and conveyance continue until that time); *Bartels v. Director of Division of Employment Security*, 326 Mass. 1, 6, 92 N.E.2d 370, 373 (1950) (trust may terminate "by operation of law ... or ... by distribution of the assets"). *See also* M. Shattuck, *Massachusetts Annotations to the Restatement of the Law of Trusts* (1935) at 277–78 (collecting cases in which "the period of the trust was fixed ... by necessary implication according to the terms of the trust ... and upon the happening of the given contingency the trust was terminated"). Brine has cited no case in Massachusetts or any other jurisdiction that would suggest a different rule.[5]

By July 1928, J & C had accomplished all the purposes that Swift intended in his 1922 letter. It had paid Swift's obligation to First National and had physically delivered the original shares, endorsed in blank, to Swift's estate. No further action was required of J & C to transfer title to the stock. *See Place v. Chaffee*, 251 Mass. 508, 510, 146 N.E. 722, 723 (1925); Mass. Ann.Laws ch. 155, § 27 (1914), *reprinted in* Mass.Ann.Laws ch. 106, Appendix (Uniform Commercial Code), at 335 (Michie/Law. Co-op. 1967).[6] Swift's intended purposes having been fulfilled, any trust

---

**4.** Judge Keating's Order that J & C "pay over and deliver ... the balance of the securities and funds" in Swift's account to Swift's estate after covering Swift's obligation to First National was stricken on appeal by the Massachusetts Supreme Judicial Court because no formal counterclaim for such payment had been filed by the estate. *First National Bank of Boston v. Swift*, 258 Mass. 573, 580–81, 155 N.E. 606, 608 (1927). This procedural reversal does not reduce the value of the Superior Court's finding on the interpretation of Swift's 1922 letter, nor does it negate the effect of J & C's subsequent delivery of the original shares to Swift's estate.

**5.** Cases such as *Boston Safe Deposit & Trust Co. v. Lewis*, 317 Mass. 137, 57 N.E.2d 638 (1944), *Welch v. Flory*, 294 Mass. 138, 200 N.E. 900

(1936) and *Ball v. Hopkins*, 268 Mass. 260, 167 N.E. 338 (1929) are inapposite. Unlike this case, all such decisions involved the administration of a trust by an active trustee. In no case was a former trustee held to a fiduciary's standard after the trust had terminated entirely.

**6.** Massachusetts repealed Chapter 155 in 1957 when it adopted the Uniform Commercial Code. Section 19 of chapter 765 of the 1957 Act provided, however, that all transactions effected prior to October 1, 1958 (the effective date of the Act), and all "rights, duties and interests flowing from them remain valid ... as though [the 1957 Act] had not occurred." Thus, for purposes of evaluating J & C's actions in 1928, Chapter 155, § 27, applies.

that may have been created by Swift's 1922 letter was terminated upon conveyance of the original shares to Swift's estate. From that time forward, J & C had no fiduciary obligations to Swift or his estate. Thus no breach of such duties, or repudiation of a trust, could have occurred after July 1928 because no relevant trust or duties existed at that time.

The only dividends or dividend shares now sought by Brine were delivered to J & C after July 1928. A contract action for recovery of these dividends might have been successful; J & C's performance in this case was certainly not a model of efficiency or good business practice. But any such action was subject to the six-year statute of limitations imposed by Massachusetts law. Failing timely institution of such an action, Brine's claims as to those dividends and dividend shares are now time-barred.[7]

### III

Thus the district court was essentially correct in its decision. J & C did not receive Swift's dividends as a result of wrongdoing, but only because Swift's estate failed to record the transfer of the original shares and then failed to note the mispayment of dividends for almost half a century. Massachusetts law permits "reliance on the closed transaction after a considerable amount of time." *New Bedford, supra,* 363 Mass. at 121, 292 N.E.2d at 693. The judgment of the district court is therefore

*Affirmed.*

---

7. Because we hold that any trust created was terminated in July 1928 and claims for dividends received after that date are consequently time-barred, we need not address Brine's contentions regarding repudiation of a trust, nor need we decide whether laches or lack of due diligence would now bar an action for breach of trust by Swift's estate.