Gershengorn, J.
In the underlying action, the plaintiff, Denson W. Hudgens, Jr. (“Hudgens” or “Plaintiff’), filed claims against the defendant, Harvard University (“Harvard”), for specific performance and declaratory relief, breach of contract, defamation, and infliction of emotional distress. Harvard now moves to dismiss the claims against it in the plaintiffs complaint pursuant to Mass.R.Civ.P. 12(b)(6). For the following reasons, Harvard’s motion to dismiss is ALLOWED.
BACKGROUND
The plaintiff is a former employee of Harvard. He worked at the university as a security guard from April' 29, 1988 to February 1989. When Hudgens left Harvard, he and his supervisor, Robert J. Dowling (“Dowling”), orally agreed that the plaintiff would waive his grievance rights and back pay and resign in exchange for Harvard’s removal of certain records from the plaintiffs personnel file.
According to Hudgens, in late 1997 and early 1998, he began the application process for a position with the Dade County Sheriffs office in Florida. During this process, the plaintiff got a copy of his employment file from Harvard because copies of the file would be requested by the Dade County Sheriff as part of the hiring process. Upon reviewing the file, Hudgens was shocked to learn the presence of the following materials in his file: a change of status form stating that he abandoned his job on November 12, 1988; an employee notice stating that he was suspended “for misconduct while in uniform”; and a letter dated February 18, 1989, stating that the plaintiff failed to appear at a scheduled meeting on February 3, 1989 and that he abandoned his job at Harvard. In addition, Hudgens was shocked that the file had been released to the law firm of Nutter, McClennen & Fish on May 17, 1996 as part of a subpoena duces tecum. '
The plaintiff states that on November 8, 1988, Dowling suspended him from his employment at Harvard for “misconduct while in uniform.” Hudgens later learned that the suspension was a result of charges against him by his girlfriend alleging domestic abuse. The charges were, however, dismissed with prejudice. Thereafter, the plaintiff filed a grievance with the Union, and a grievance hearing began in January of 1989. Instead of following through with the hearing in an attempt to be reinstated, Hudgens contacted Dowling and entered the agreement to resign and waive past due salary funds in exchange for the removal of all references to the alleged incidents from his employment record.
According to the plaintiff, in late 1997 he discovered that Dowling and Harvard did not keep their end of the bargain. He had waived his rights in return for Harvard’s keeping his employment record clean. Thereafter, Hudgens commenced this action in April 1998.
DISCUSSION
A Court will not dismiss a complaint for failure to state a claim “unless it appears beyond doubt that plaintiff can prove no set of facts in support of [her] claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977). The Court must accept as true the well-pleaded factual allegations of the complaint, as well as any inferences that can be drawn therefrom in plaintiffs favor. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). Furthermore, the Court will not dismiss a complaint if it would support relief on any theoiy of law. Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979). In the case at hand, the plaintiffs complaint fails to state a claim and, therefore, must be dismissed.
A. Counts I and II:
Specific Performance/Declaratoiy Judgment and Breach of Contract
Counts I and II are based upon the alleged breach of contract by Harvard. In general, a contract action must be brought within six years after the cause of action accrues. Barber v. Fox, 36 Mass.App.Ct. 525, 527 (1994); G.L.c. 260, §2. In addition, “[i]n Massachusetts, the statutes of limitations applicable to law actions based on contract and tort are applicable to suits in equity." Palandjian v. Pahlavi, 614 F.Supp. 1569, 1577 (D.Mass. 1985) (citations omitted), aff'd 808 F.2d 1513 (1st Cir. 1986), cert. denied 481 U.S. 1037 (1987). See City of New Bedford v. Lloyd Inv. Assoc., Inc., 363 Mass. 112 (1973). The action accrues at the time the contract is breached. Id. (citations omitted).
There are, however, some circumstances in which the discovery rule applies and can toll the running of the statute of limitations. Where a cause of action for *146 “breach of contract is not capable of being discovered because it is based on an ‘inherently unknowable’ wrong, . . . the discovery rule tolls the accrual date of the statutory period until the injured party knows or should know the facts giving rise to the cause of action.” International Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc., 29 Mass.App.Ct. 215, 222 (1990), citing Frank Cooke, Inc. v. Hurwitz, 10 Mass.App.Ct. 99, 106 (1980). A claim is “inherently unknowable” if it cannot be discovered through the exercise of reasonable diligence. Melrose Housing Auth. v. New Hampshire Ins. Co., 24 Mass.App.Ct. 207, 212 (1987), aff'd 402 Mass. 27 (1988). When the discovery rule is applicable, the cause of action accrues when the person who has been damaged “knows or in the exercise of reasonable diligence should know the facts giving rise to the cause of action.” Frank Cooke, Inc. v. Hurwitz, supra at 106 (citations omitted).
In the instant case, the discovery rule does not apply, and therefore, the plaintiffs cause of action accrued well before he discovered that the damaging documents had not been removed from his file. Here, Hudgens could have asked for access to his employee file. Pursuant to G.L.c. 149, §32C, “any employer receiving a written request from an employee shall provide the employee with an opportunity to review his personnel record.” In order to assure that Dowling followed through with his part of such an important agreement, the plaintiff should have asked to see his file within a reasonable time after the execution of the oral contract. Upon checking it, he would have discovered that the papers had not been removed. Therefore, his cause of action was not “inherently unknowable, and Hudgens could have commenced this suit within the six year statute of limitations.
The plaintiff argues, however, that he had no occasion or need to check his file until he was applying for a position with the Dade County Sheriffs office. According to the plaintiff, this time frame was in late 1997 and early 1998. In addition, he states that the contract provided no specific date regarding the time within which the oral contract had to be performed. If the contract did not contemplate immediate performance, “a reasonable time is implied as a matter of law.” Auclair v. Thomas, 39 Mass.App.Ct. 344, 347 (1995).
Since the action is governed by the six-year statute of limitations for contracts and he did not commence it until 1998, the latest that Hudgens could have commenced this action was in 1992. This is more than three years after the oral contract was made. As consideration for the contract, the plaintiff waived his employment grievance rights, claims to back pay, and resigned from Harvard. This Court does not see how, as a matter of law, a contract of this type under these circumstances could call for performance any later than three years. Accordingly, Counts I and II are dismissed.
B. Count III: Defamation
According to Hudgens, the alleged defamatory statements made by Harvard consisted of the written documents placed in his file between November 1988 and February 1989. If these documents are the only basis upon which the plaintiff brings his claim for defamation, then the statute of limitations also bars this count. G.L.c. 260, §2A states that tort actions shall be commenced within three years after the action accrues. The papers were added to Hudgens’ file, at the latest, in 1989. He did not commence this action until 1998, more than three years after the cause of action accrued. Therefore, the count for defamation must be dismissed.
Furthermore, even if the alleged defamation were based upon Harvard’s release of the plaintiffs personnel file to Nutter, McClennen & Fish in 1996, the claim 'must be dismissed. The documents were requested and released pursuant to a subpoena duces tecum. “An ‘absolute privilege applies to defamatory statements made in the institution or conduct of litigation or in conferences and other communications preliminary to litigation.’ ” Dolan v. VonZweck, 19 Mass.App.Ct. 1032, 1033 (1985) (quoting Sullivan v. Birmingham, 11 Mass.App.Ct. 359, 361 (1981)). As a result, Harvard is protected by this absolute privilege.
C. Count IV: Intentional Infliction of Emotional Distress
In order to maintain a claim for intentional or reckless infliction of emotional distress, the plaintiff must show that the defendant, without privilege to do so, by extreme and outrageous conduct, intentionally caused severe emotional distress to the plaintiff. Agis v. Howard Johnson Co., 371 Mass. 140 (1976). In such cases, the defendant is liable for the plaintiffs emotional distress and any bodily harm resulting from it. Id. Although Hudgens claims that Harvard breached the contract, he does not point to any behavior or activity by Harvard that goes beyond all bounds of decency and that is utterly intolerable in a civilized community. Mello v. Stop & Shop Cos., 402 Mass. 555 (1988). Based upon the four corners of the complaint, the plaintiff fails to state a claim upon which relief can be granted.
ORDER
It is therefore ORDERED that Harvard’s motion to dismiss be ALLOWED.