NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY
*vs.* YORK AND WHITNEY COMPANY.

Suffolk. January 9, 1913. — May 24, 1913.

Present: RUGG, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Practice, Civil*, Findings of trial judge. *Bill of Lading. Evidence*, Presumptions and burden of proof. *Carrier*, Freight charges, Interstate commerce rates. *Contract*, Implied in fact. *Interstate Commerce. Estoppel. Damages*, Recoupment.

In an action at law a general finding by a judge sitting without a jury, like the verdict of a jury, cannot be revised upon questions of fact if it was warranted by the evidence.

In an action by a railroad corporation for freight charges against a dealer who

also was a commission merchant, where it appears that the goods were shipped to the defendant as a commission merchant but that this fact was not brought to the knowledge of the plaintiff, if it also appears that the defendant was named as the consignee in the bill of lading and that no other person was named as owner therein, this warrants a finding of fact that the plaintiff was justified in treating the defendant as the owner of the goods.

Where the consignee of goods sent by rail receives them under a bill of lading, one of the terms of which is that the consignee shall pay the freight at the rate stated, and no special rate is stated, but the bill of lading contains a printed provision that the "property will be carried at tariff rates," receipt and acceptance of the goods under the bill of lading is evidence of an implied promise by the consignee to pay the freight charges established under the interstate commerce act.

In an action by a railroad corporation against the consignee of goods, who received them from the plaintiff under a bill of lading by which he agreed to pay the freight rates established under the interstate commerce act, to recover a balance of the freight charges, which had not been claimed at the time of the delivery of the goods by reason of an erroneous classification that was not discovered until several months later, the defense of estoppel is not open, because the rate of the charges which the plaintiff seeks to recover is fixed by law and could not be reduced even by showing an express contract to that effect, and consequently cannot be reduced by an estoppel to deny the existence of such a contract; and for the same reason the defendant cannot be allowed to reduce the damages by showing in recoupment the effect of the payment of and the receipt given for the wrong rate.

RUGG, C. J.   This is an action to recover a balance of freight charges which through the carrier's mistake had not been claimed or collected at the time of the delivery of the goods.   The case was submitted to a judge of the Superior Court* on an agreed statement of facts with power to draw proper inferences.   The material points are that sweet potatoes were shipped by one Culver from Delmar in the State of Delaware to the defendant, a dealer and commission merchant in large business at Boston.   The extent of the defendant's business was not fully known to the plaintiff.   The goods were shipped to the defendant as a commission merchant, but this information had not been expressly conveyed to the plaintiff.   Upon arrival in Boston the goods were delivered to the defendant without previous request or mention of payment of freight, the defendant being upon the plaintiff's credit list and freight bills being sent it weekly.   Before the delivery the defendant was told by the plaintiff that the freight was $102.30, and this amount was subsequently paid to the plaintiff and was

---

* *Keating*, J.

charged by the defendant in the settlement with its consignor. Several months later it was discovered that a mistake had been made in this statement of the amount due and collected for freight, and that the lawful rate established by the tariff filed and published in accordance with the interstate commerce act had not been collected. The reason was that the goods had been erroneously classified, and that therefore the rate legally due was higher than that at first charged. It is to recover this difference between the rate collected and that lawfully due that this action is brought.

The bill of lading on which the goods were shipped contained this clause: "The owner or consignee shall pay the freight at the rate herein stated and all other charges accruing on said property before delivery . . .; and if, upon inspection, it is ascertained that the articles shipped are not those described in this bill of lading the freight charges must be paid upon the articles actually shipped and at the rates and under the rules provided for by the published classifications." The judge made rulings, requested by the defendant, that "Failure to collect the lawful rate here was through a mutual mistake of fact" and that the burden was upon the plaintiff "to show the actual weight of all the packages of potatoes as shipped," refused numerous other requests, found for the plaintiff and reported the case.

1. The general finding for the plaintiff stands upon the same ground as a verdict of a jury, and cannot be overturned unless unsupported by substantial evidence. *Bailey* v. *Marden*, 193 Mass. 277. It is evidence of ownership that one is named as consignee in a bill of lading. *Rosenbush* v. *Bernheimer*, 211 Mass. 146, 149. The defendant was named as consignee in the bill of lading of the goods in question. No other owner was named therein. The fact that it was a commission merchant was not expressly brought to the knowledge of the plaintiff. The general finding in favor of the plaintiff may be presumed to have involved the subsidiary conclusion that such information was not impliedly or inferentially brought to its attention. It follows from this that the general finding for the plaintiff may be supported on the ground that the plaintiff in the light of all the facts known to it, rightly treated the defendant as the owner. It cannot be said that such finding was unwarranted.

Moreover, the defendant received the goods under a bill of

lading, one of the terms of which was that the consignee should pay the freight at the rate stated. No special rate was stated in the bill of lading, but on its face is printed the provision, that unless otherwise provided the "property will be carried at tariff rates," that is, according to the rates established by the published classification. Acceptance and receipt of goods by a consignee under a bill of lading of this tenor is strong evidence of an implied promise on his part to pay the freight. It is enough to support a finding to that effect. *Blanchard* v. *Page*, 8 Gray, 281, 291. *Old Colony Railroad* v. *Wilder*, 137 Mass. 536. *Erie Railroad* v. *Wanaque Lumber Co.* 46 Vroom, 878. It is not necessary to consider what would be the rights of the parties if the plaintiff actually had known, before delivery of the goods by it, that the defendant was an agent of the Delaware owner, for under the circumstances disclosed here there was evidence sufficient to warrant the finding that the defendant, even though an agent, had impliedly promised to pay the lawful freight. *Boston & Maine Railroad* v. *Whitcher*, 1 Allen, 497. The facts in the case at bar distinguish it from *Central Railroad* v. *MacCartney*, 39 Vroom, 165, especially relied on by defendant.

2. The defendant might have been found to have promised by implication to pay the freight rate lawfully established under the interstate commerce act. The aim of that act was to secure for each and every shipper of goods in interstate commerce absolute equality of reasonable rates, uniform in application, without discrimination or preference. The railroad and the shipper are bound inexorably to follow the rate published. No excuse, which operates as an evasion of that rate, has any standing as matter of law in defense of a proved violation of such rate. Mistake, inadvertence, honest agreement and good faith are alike unavailing. *Hooker* v. *Boston & Maine Railroad*, 209 Mass. 598, 603. *New York, New Haven, & Hartford Railroad* v. *Interstate Commerce Commission*, 200 U. S. 361, 391, 399. *Armour Packing Co.* v. *United States*, 209 U. S. 56. *New York Central & Hudson River Railroad* v. *United States*, 212 U. S. 481, 495, 504. As was said in *Louisville & Nashville Railroad* v. *Mottley*, 219 U. S. 467, at 477, "It is now the established rule that a carrier cannot depart to any extent from its published schedule of rates for interstate transportation on file without incurring the penalties of the stat-

ute." A promise by implication well might have been found to be to pay the only rate which the plaintiff could charge without laying itself open to criminal prosecution, namely, that shown by the published tariff.

3. If the finding of the judge was either that the defendant by implication had promised to pay the legal freight rate or that there were no facts which prevented the plaintiff from relying upon the presumption that the defendant, being the consignee, was the owner, and hence was liable for the freight, then the plaintiff is not estopped to maintain this action. Estoppel against the collection of a rate fixed by rigid law cannot be predicated upon a statement or representation, which at most can be of no higher binding force than an express contract to the same effect honestly made by both parties would be. Such a contract would be of no avail in any aspect, because contrary to law. Estoppel cannot rest on an illegal contract. *Texas & Pacific Railway* v. *Mugg*, 202 U. S. 242. *Chicago & Alton Railroad* v. *Kirby*, 225 U. S. 155, 166. *Gulf, Colorado & Santa Fe Railway* v. *Hefley*, 158 U. S. 98. The reason why there must be inflexibility in the enforcement of the published rate against all and every suggestion for relaxation rests upon the practical impossibility otherwise of maintaining equality between all shippers without preferential privileges of any sort. The rate when published becomes established by law. It can be varied only by law, and not by act of the parties. The regulation by Congress of interstate commerce rates takes that subject out of the realm of ordinary contract in some respects, and places it upon the rigidity of a quasi statutory enactment. The public policy thus declared supersedes the ordinary doctrine of estoppel, so far as that would interfere with the accomplishment of the dominant purpose of the act. It does not permit that inequality of rates to arise indirectly through the application of estoppel, which it was the aim of the act to suppress directly. To this effect are decisions of other courts. *Melody* v. *Great Northern Railway*, 25 So. Dak. 606. *Louisiana Railway & Navigation Co.* v. *Holly*, 127 La. 615. *Chicago, Rock Island & Pacific Railroad* v. *Hubbell*, 54 Kans. 232. *St. Louis & San Francisco Railway* v. *Ostrander*, 66 Ark. 567. *Haurigan* v. *Chicago & Northwestern Railway*, 80 Neb. 132, 139.

4. The same reasoning makes ineffectual the defendant's ar-

gument for recoupment and as to the effect of payment of and receipt for the wrong rate. The hardship, if any has been wrought in the present case, arises out of the enforcement of a positive rule established for the accomplishment of a broad public purpose. The probability of damages arising from mistakes of this kind perhaps has been reduced by the penalty upon the carrier provided by U. S. St. 1910, c. 309, § 9 (36 U. S. Sts. at Large, 548). But this is payable to the United States, and no direct relief is afforded to the shipper.

5. The defendant, in view of an adverse decision upon the points already discussed, has waived its other exceptions. Hence they are not considered.

*Judgment for the plaintiff on the finding.*

*J. L. Hall,* for the plaintiff.

*A. L. Taylor,* for the defendant.