HAVERHILL GAS COMPANY *vs.* FRED J. FINDLEN & others.[1]

Essex.    March 5, 1970. — May 4, 1970.

Present: WILKINS, C.J., SPALDING, KIRK, REARDON, & QUIRICO, JJ.

*Public Utilities.    Gas Company.*

A gas company was entitled to maintain a contract action against a consumer for the difference between the price which should have been charged for natural gas according to the company's filed schedules allowed by the Department of Public Utilities under G. L. c. 164, § 94, and a lower price which was billed by the company by mistake and paid by the consumer; an alleged employment by the company of a meter which was illegal under § 115 was without pertinency.

CONTRACT.    Writ in the Central District Court of Northern Essex dated April 27, 1965.

Upon removal to the Superior Court the case was tried before *Good,* J.

*Robert J. Sherer* for the defendants.
*Peter Laraba* for the plaintiff.

WILKINS, C.J.    This is an action of contract on an account annexed for natural gas sold and delivered in the seven months from December, 1963, to June, 1964, inclusive.    The jury found for the plaintiff in the amount of $3,829.25.    The defendants excepted to rulings on evidence, to the charge, and to the denial of requests for instructions.

In 1963 and 1964 at the request of the defendants, who were general contractors constructing a housing project for the Haverhill Housing Authority, the plaintiff furnished natural gas to heat the project during the construction. Due to a mistake of the plaintiff the defendants were billed for only one tenth of the gas used.    When after the completion of the project the error was discovered, the plaintiff

---

[1] Joseph Edward Findlen, Robert F. Findlen, Fred P. Findlen, and John J. Powers, who with Fred. J. Findlen are copartners doing business under the firm name and style of Fred. J. Findlen & Sons.

submitted a corrected bill, which the defendants refused to pay. The verdict is for the difference between the price which should have been charged and the price which was erroneously billed and paid.

The project was larger than the usual domestic project. It comprised nine buildings housing eighty apartments, and a community building. The size of the project and the amount of gas to be supplied necessitated a metering system differing from that of the ordinary domestic consumer. This meter measures in thousands of cubic feet, and the company's billing is set up on a hundred cubic foot basis, so there would be a constant of ten for the meter, that is, the reading from the indicator on the base pressure index "would be multiplied by ten converted to units of one hundred." On the front of the base pressure index is a metal plate on which was engraved: "Drive shaft 1 rev. equals 10 cu. ft. Rear index multiply by 100. Front index multiply by 1000." This meter and base pressure index were inspected and approved by the Department of Public Utilities on August 8, 1963. At the time of the installation of the base pressure index the multiplier or constant was not noted on the meter order in the company's files. Consequently, the defendants were billed for only one tenth of the gas used. The defendants paid the original monthly bills totaling $447.65.

In this Commonwealth gas and electric rates are fixed by the Department of Public Utilities. G. L. c. 164, § 94.[1] "It is not wrongful for a gas company to charge its customers the rates established by an order of the department. General Laws (Ter. Ed.) c. 164, § 94, as amended by St. 1939, c. 178, § 1, provides that until the effective date of some change 'no different rate, price or charge shall be charged, received or collected by the company filing such a schedule from those specified in the schedule then in effect' . . . . It is settled that rates charged by a public service company in accordance

---

[1] "Gas and electric companies shall file with the department schedules . . . showing all rates, prices and charges to be thereafter charged or collected within the commonwealth for the sale and distribution of gas or electricity."

with its filed schedules allowed by the department cannot be questioned in court proceedings between the customers and the company." *Sullivan* v. *Boston Consol. Gas Co.* 327 Mass. 163, 166–167.

This is another example of the inflexibility of rates fixed by public authority. In *Papetti* v. *Alicandro*, 317 Mass. 382, a carrier of goods by motor vehicle was allowed to bring an action against a shipper to recover a minimum rate which was legally established by the Department of Public Utilities and which the carrier had unlawfully rebated to the shipper. At p. 386 it was said: "The present action, in effect, is brought for the enforcement of the schedule of rates established under the act." There was noted at pp. 391–392, a resemblance to the Interstate Commerce Act and numerous decisions of the Supreme Court of the United States and of this court. "'Neither the intentional nor accidental misstatement of the applicable published rate will bind the carrier or shipper. The lawful rate is that which the carrier must exact and that which the shipper must pay.' *Kansas City Southern Railway* v. *Carl*, 227 U. S. 639, 653. The 'effect of filing schedules of rates with the Interstate Commerce Commission was to make the published rates binding upon shipper and carrier alike, thus making effectual the purpose of the act to have but one rate, open to all alike and from which there could be no departure.' *Boston & Maine Railroad* v. *Hooker*, 233 U. S. 97, 112."

"One to whom a certificate [as a common carrier]: has been granted [by the Department of Public Utilities] is bound to collect and the shipper to pay the established rates for the service rendered, and neither is excused through fraud, accident, mistake, or any other cause from collecting or paying the said rates." *Mt. Tom Motor Line, Inc.* v. *McKesson & Robbins, Inc.* 325 Mass. 45, 48–49. "It is clear that if a common carrier, dealing as such, charges less than its filed tariff, or if a contract carrier, dealing as such, charges less than its filed schedule of rates, each may recover the differences." *Superline Transp. Co. Inc.* v. *My Bread Baking Co.* 350 Mass. 364, 368.

In *New York, N. H. & H. R.R.* v. *York & Whitney Co.*
215 Mass. 36, there was an action to recover a balance of
freight charges which through the carrier's mistake had not
been claimed or collected at the time of the delivery of the
goods which were shipped from Delaware to Boston. At
pp. 40–41, it was said by Chief Justice Rugg: "The reason
why there must be inflexibility in the enforcement of the
published rate against all and every suggestion for relaxation
rests upon the practical impossibility otherwise of main-
taining equality between all shippers without preferential
privileges of any sort. The rate when published becomes
established by law. It can be varied only by law, and not by
act of the parties. The regulation by Congress of interstate
commerce rates takes that subject out of the realm of or-
dinary contract in some respects, and places it upon the
rigidity of a quasi statutory enactment. The public policy
thus declared supersedes the ordinary doctrine of estoppel,
so far as that would interfere with the accomplishment of
the dominant purpose of the act. It does not permit that
inequality of rates to arise indirectly through the applica-
tion of estoppel, which it was the aim of the act to suppress
directly. To this effect are decisions of other courts. . . .
The same reasoning makes ineffectual the defendant's
argument for recoupment and as to the effect of payment of
and receipt for the wrong rate."

The case at bar greatly resembles *Wisconsin Power &
Light Co.* v. *Berlin Tanning & Mfg. Co.* 275 Wis. 554, which
also was an action for gas furnished. The plaintiff installed
on the defendant's premises a meter which had a front ac-
cumulative indicator or index. The reading on the index
when multiplied by 1,000 equaled the number of standard
cubic feet of gas used. In order to compute the charge, the
reading on the meter was to be multiplied by 1,000 and then
divided by 100 in order to compute the number of hundreds
of cubic feet, and the same result was reached when the
meter reading was multiplied by ten. During the period in
suit the meter was read by the plaintiff's employees. The
readings were not multiplied by ten, and in rendering

monthly bills the plaintiff charged the defendant for one
tenth of the number of hundreds of cubic feet actually
furnished. The plaintiff, as soon as the mistake was dis-
covered, brought it to the attention of the defendant, which
refused to pay. The correct billing was $26,361 and the de-
fendant had paid $3,440.79, leaving a balance owing of
$22,920.21. The court decided for the plaintiff, citing the
*York & Whitney case, supra, Texas & Pac. Ry.* v. *Mugg*, 202
U. S. 242, and *Illinois Cent. R.R.* v. *Henderson Elev. Co.*
226 U. S. 441.

The defendants' case was presented in the Superior Court
as if it were governed by ordinary contract principles in-
cluding the defence of illegality. Nothing was said on be-
half of the defendants which heeded the importance of the
public utility aspect. The judge's charge, on the other hand,
was a proper recognition that the case was governed by the
principles of public rate regulation and the binding effect of
rates validly determined by a duly established public rate
making authority. The defendants persist in the same argu-
ment in this court, and press many exceptions to the charge
which are without merit.

In order to give the numerous defendants' exceptions in
proper perspective we outline the charge at some length.

"The defendants . . . assert that the installation was
accompanied by what they allege to be an improper [meter
*sic*] or an index so-called which in their view did not measure
up to the standards" of G. L. c. 164, § 115,[1] "and that
therefore in substance the measuring of the gas consumed
was done in an unlawful fashion and therefore the plaintiff
should not be permitted to recover. . . . The real thrust
of this case, therefore, depends upon the question raised as
to the meter and the index . . . and the defendant has
asserted by way of special defense that the plaintiff per-

---

[1] G. L. c. 164, § 115. "Meters for measuring gas supplied to consumers
shall register the quantity of gas passing through them in cubic feet so that
the number of cubic feet of gas consumed may be easily ascertained by the
consumer thereof. No meter shall be used which may confuse or deceive the
consumer in ascertaining the price he pays per thousand cubic feet or the
number of cubic feet consumed."

formed its contract with them in an illegal manner and is not entitled to recover. . . . [T]here is actually no controversy about most of the facts in this case. There is no question that there was a proper supplying of gas . . . . The question is whether . . . the meter and the index, if they did not conform with the wording of this statute, renders the plaintiff incapable as a matter of law of collecting the established fees for a certain amount of gas used by the defendant[s] and supplied by the plaintiff. Now, bear in mind that the amount of charge that is assessed by the plaintiff against a consumer is not determined by the gas company but rather the rates and the tariffs are determined by the Department of Public Utilities, and therefore there is no discretion or sales point involved in the fees or the assessments charged by the utility to the customer. Indeed the rates are established by law. Therefore, the plaintiff must charge the rates established by law . . . [for] the gas used by all consumers. They have no discretion on this point unless the discretion is given them by the regulating authority. Conversely, it is true also by law that the consumer must pay the established charges for gas used and supplied by the utility. This is not discretionary either. . . . Now, the thrust of the defendants' defense therefore is that the provisions of . . . G. L. c. 164, § 115, render the performance by the plaintiff of its contract as a performance in an illegal manner and therefore the plaintiff is not entitled to recover."

"[I]n the first place, the provisions of this section of the law recite that the meter shall not confuse or deceive the consumer in ascertaining the price he pays. But the point of this statute is that although this direction is imposed with reference to meters there is no sanction imposed for failure to comply with the section. . . . [A]s a matter of law this provision does not preclude the obligation of a consumer to pay the amount of money that is assessed by the tariffs established by the Department of Public Utilities on the gas supplied by a gas company. . . . I instruct you as a matter of law . . . that the error made by the employee of the

gas company . . . in computing the bill does not render the service by the Haverhill Gas Company illegal . . . ; [t]hat a utility is like anyone else, and they are entitled to be paid for what they supply to the customer, and if in the course of events an error appears there is nothing in this statute which indicates that the utility is thereby penalized for the stupidity . . . or the lack of familiarity of an employee, nor is the customer the beneficiary of the stupidity . . . or a lack of awareness of an employee that a computation must be made. In other words, the ordinary principle of law would be that a customer would be unjustly enriched by getting ten times as much as he has paid for. Now, the only reason that this could be justified . . . would be that the Legislature said in substance that if this happens the Haverhill Gas Company or any other utility is out of luck and they can't get paid for the gas that they supplied to the customer, and I instruct you that this section of the statute has no such implication."

The defendant's exceptions are: (1) To the portion of the charge where the court stated that the rate is not determined by the gas company but by the Department of Public Utilities; that there is no discretion or sales point involved; that the plaintiff must charge the rates established by law with no discretion; and that conversely the customer must pay the established charges. (2) To the statement there is no sanction imposed in G. L. c. 164, § 115. (3) That this statute does not preclude the obligation of the consumer to pay the amount established by the tariff. (4) To the statement that the error made by the employees of the gas company in computing did not render the service illegal. (5) To the statement that the customer is unjustly enriched by getting ten times as much gas as he pays for. (6) To the statement that the provisions of G. L. c. 164, § 115, are in no sense a penalty for erroneous computations of billing. (7) To the statement that it is immaterial whether the plate was on the index or not. (8) To the statement that the defence is based on an erroneous interpretation of law.

These exceptions are tantamount to a contention that

nearly everything the judge said in his charge is wrong, and they are completely at variance with the pertinent legal principles.

The defendants have argued the denial of requests for instructions numbered 5 to 9 inclusive. These all have to do with the alleged illegality of the meter under G. L. c. 164, § 115. These have been adequately referred to above. They are without merit.

We now consider the exceptions which were to the exclusion of two questions in the direct examination of the defendant Fred P. Findlen. The first question was whether he would have kept the heat running if he had known the monthly gas bills were running between $714 and $1,100. The offer of proof was that he would not have done so. The second question was whether he could have run the project without the heat as it was. The offer of proof was that he could have shut off the gas completely at night. There was no error. In view of what we have said above these questions were immaterial.

The same defendant had testified on direct examination that he did not see the plate on the index. As to this the judge charged, "I am not leaving this matter to your judgment to determine because in this case in my judgment it is immaterial, because the plaintiff is required to supply gas to a consumer, and the consumer is required to pay for the gas consumed." In our opinion this was correct.

The cases of *Tocci* v. *Lembo*, 325 Mass. 707, and *Hawes Elec. Co.* v. *Angell*, 332 Mass. 190, which deal with the defence of illegality, relied on by the defendants, are not concerned with rates or rate regulation, and have no pertinence to the case at bar.

*Exceptions overruled.*