# Boston Edison Company vs. City of Boston.

Suffolk.  October 6, 1983. — January 18, 1984.

Present: Hennessey, C.J., Liacos, Abrams, & Lynch, JJ.

*Public Utilities.  Municipal Corporations,* Contracts, Municipal finance,
Interest.  *Contract,* Municipality.  *Boston.  Interest.*

A utility company's supplying of electricity to the city of Boston for munic-
ipal purposes is not a transaction implicating the special statutory re-
quirements that the city's contracts be in writing and approved by the
mayor, and that expenditures not exceed the amounts appropriated by
the city council; consequently the company was entitled to recover
from the city an interest charge on its overdue electric accounts in
accordance with a 1975 order of the Department of Public Utilities,
and G. L. c. 164, § 94D, as amended through St. 1977, c. 328. [775-779]
The Department of Public Utilities, in setting prices and establishing con-
ditions for electrical service, had authority in 1975 to fix a general inter-
est charge payable to a utility company on overdue electric bills, and
to make this charge applicable to municipal consumers. [779]

Civil action commenced in the Superior Court Depart-
ment on November 15, 1979.

A motion for summary judgment was heard by *Furnari,*
J., a District Court judge sitting under statutory authority.

The Supreme Judicial Court granted a request for direct
appellate review.

*Arlene S. LaPenta,* Assistant Corporation Counsel (*Jo-
Ann M. Marzullo* with her) for the defendant.

*William G. Meserve* (*John A. Walsh, Jr.,* with him) for
the plaintiff.

Lynch, J.  This case raises the issue whether the city of
Boston, a municipal consumer of electric power, may be
charged interest when it fails to pay its bills on time.  A judge
in the Superior Court found that the city was liable for in-
terest, but only on bills that came due after June 27, 1977,
the effective date of St. 1977, c. 328, amending G. L. c. 164,

§ 94D. He therefore allowed partial summary judgment in favor of Boston Edison Company (Edison). Both parties have appealed from this judgment. The city claims that it cannot be charged interest, the provision of § 94D notwithstanding, while Edison argues that the city is liable for interest as of February 19, 1975,[1] when the Department of Public Utilities (department) approved a general interest charge for nonresidential customers. Edison's appeal is before this court on direct appellate review; the city's appeal was transferred to this court on our own motion. The partial judgment in favor of Edison is affirmed and the case is remanded to the Superior Court for the entry of a further judgment in Edison's favor consistent with this opinion.

The facts are straightforward. The city purchases electricity from Edison for numerous buildings and facilities. There is no written contract between the parties, but the city pays for whatever electricity it uses according to the rates and charges filed with and approved by the department pursuant to G. L. c. 164, § 94. In February, 1975, the department's order became effective which approved the collection of a late payment charge of 1½% a month by Edison and other utilities for accounts that were overdue by twenty-five days or more. DPU 18248. On June 27, 1977, St. 1977, c. 328, became effective, which provided that late charges could not be collected from the Commonwealth or any municipal customer until the bill had been overdue fifty-five days.[2] During the relevant period (1975 to the present),

_____

[1] The department's order gives February 10, 1975, as the effective date, but the judge in his memorandum opinion and the parties specify February 19, 1975. We will treat February 19, 1975, as the effective date. Nothing in this opinion turns on this point.

[2] Edison makes the incidental argument that interest of this sort, imposed as a charge for overdue bills, is not a penalty, but rather is a charge for the use of money belonging to someone else. There is some support for this position. See, e.g., *Consolidated Edison Co.* v. *Yeshiva Univ.*, 67 A.D.2d 895 (N.Y. 1979) ("[t]he charge imposed for late payments is neither a penalty nor a service charge"); *District of Columbia* v. *Potomac Elec. Power Co.*, 402 A.2d 430, 441 (D.C. 1979) ("Interest is not imposed on a debtor's obligation in order to exact a penalty. It is imposed to compensate the creditor for the loss of the use of its money"). See also *Plasko*

the city has incurred late charges for overdue accounts but has refused to pay Edison any amount claimed to be due as interest.

1. *Statutory history.* The provision of electricity in Massachusetts is thoroughly regulated. The process of utility rate making by a public regulatory body is the exercise of a legislative function, *Boston Real Estate Bd.* v. *Department of Pub. Utils.*, 334 Mass. 477, 482 (1956), which has been delegated to the department through the enactment of G. L. c. 164. Specifically, G. L. c. 164, § 94, authorizes the department to prescribe the "rates, prices and charges" which utilities may charge. General Laws c. 164, § 94D, concerns penalties and late charges for overdue accounts. As originally enacted in 1936, § 94D prohibited the collection of penalties from residential consumers. St. 1936, c. 243.[3] There is no indication that Edison included late charges in its rate schedule until 1975 when it, along with four other utilities, petitioned the department to approve an interest charge of 1½ % a month for accounts overdue more than twenty-five days. The department approved this change, citing the increase in the numbers of accounts receivable outstanding for more than thirty days, "especially from industrial and commercial customers." DPU 18248.

In 1977, a second paragraph was added to § 94D. St. 1977, c. 328.[4] The legislative history makes it clear that the General Court was concerned about the imposition of late charges on State and municipal agencies and wished to ex-

---

v. *Orser*, 373 Mass. 40, 43 (1977). Because of the view that we take of the case it is unnecessary for us to address this issue.

[3] Statute 1936, c. 243, states in pertinent part: "No gas or electric company shall collect from a customer on account of his failure to pay any bill due for gas or electricity furnished to him for domestic purposes any charges as, or in the nature of, a penalty . . . ."

[4] Statute 1977, c. 328, states in pertinent part: "No gas or electric company shall collect from the commonwealth or any city, town, county or political subdivision thereof, on account of its failure to pay any bill due for gas or electricity furnished to the commonwealth, or any city, town, county or political subdivision thereof, any charges as, or in the nature of, a penalty until the expiration of fifty-five days from the date of such bill . . . ."

tend the grace period from twenty-five to fifty-five days. There were proposals that State and municipal consumers be exempted from interest charges. 1977 House Doc. No. 3120, at 1-2. 1977 House Doc. No. 5581, at 1.

This review of the statutory history and the order of the department identifies the three distinct time periods at issue in this case. It is agreed that prior to the approval of general late charges as part of the rate schedule in 1975 (DPU 18248), Edison could not charge the city interest on overdue accounts. Between February 19, 1975, and June 27, 1977, if Edison could collect interest from the city, it would be on the authority of DPU 18248. Interest would start to accrue when the bills were overdue twenty-five days. After June 27, 1977, it would be on the authority of DPU 18248 and St. 1977, c. 328, and interest would start to accrue after fifty-five days. Edison argues that it can collect interest according to this scheme. The city argues that neither the order of the department nor the 1977 amendment to G. L. c. 164, § 94D, gives Edison the authority to assess a late charge for its overdue accounts.

2. *The period subsequent to June 27, 1977.* We address the most recent period first. The city maintains that even the straightforward language of St. 1977, c. 328, does not obligate it to Edison for interest payments because the city is governed by a special statute, the City of Boston Code (Code), which requires all contracts for more than $2,000 to be in writing and approved by the mayor. City of Boston Code, Statutes, tit. 4, § 8 (1975). Furthermore, Title 4, § 4, prohibits expenditures in excess of appropriations. The city argues that the Code, since it is a special law, overrides the provisions of the general law. Although there is some support for this argument, see *Haffner* v. *Director of Pub. Safety of Lawrence,* 329 Mass. 709, 713-714 (1953), we have also recognized that local laws are superseded by statutes that deal comprehensively with a Statewide problem, and that utility regulation is one type of comprehensive legislation that preempts local ordinances. *New England Tel. & Tel. Co.* v. *Lowell,* 369 Mass. 831, 834-835 (1976).

Whether the laws regulating utilities take precedence over inconsistent special laws, such as the Code, we conclude that in this case the provisions of the Code do not conflict with G. L. c. 164, § 94D. This is so because, first, the provision of electricity to the city is not a relationship where the special contract requirements are implicated, and second, it is not an expenditure for which budgetary appropriation must be made in the regular way.

a. *Contracts must be in writing and approved by the mayor.* The city claims that it cannot be required to pay interest on its overdue electric bills because it has no written contract with Edison.[5] It cites several cases where the requirements of tit. 4, § 8 (or comparable ordinances or by-laws of other municipalities), were strictly and absolutely adhered to, despite an unfair result. See, e.g., *Urban Transp., Inc.* v. *Mayor of Boston,* 373 Mass. 693, 696-697 (1977) (even after providing bus service to the city for three years, plaintiff could not recover because contract had never been approved by mayor); *Central Tow Co.* v. *Boston,* 371 Mass. 341, 343-344 (1976) ("No doubt it was most imprudent of the parties not to have entered into an express contract . . . [t]hat the parties were neglectful, however, did not repair the absence of the elements, fixed by statutes, which were essential here to the formation of a contract"); *Adalian Bros.* v. *Boston,* 323 Mass. 629, 632 (1949) ("It is . . . settled that limitations on the contracting power of municipal officers cannot be evaded by first rendering services or furnishing supplies without an express contract and then claiming under an implied contract").

This argument would be convincing if the service provided by Edison were one for which a contract is appropriate. The Appeals Court faced precisely this issue in *Boston Gas Co.* v. *Boston,* 13 Mass. App. Ct. 408, S. C., 386 Mass. 1102 (1982), and we fully agree with the court's analysis in that case. None of the reasons for requiring the safeguards of a

---

[5] It should be noted that the city does not contend that the lack of a written contract means it is not obligated for the cost of the electricity itself, but only for the interest on overdue bills.

written contract approved by the mayor is applicable here. The city must have electricity, and unless it generates its own, Edison is the only possible source. Since Edison has a legislatively sanctioned monopoly, there could never be competitive bidding. The rates themselves are set legislatively and cannot be altered by the parties. *New York, N.H., & H.R.R.* v. *York & Whitney Co.*, 215 Mass. 36 (1913). When a utility wants to change its rates, it must file a schedule with the department. G. L. c. 164, § 94. A consumer's challenge to a rate must be filed through the department, not the courts. *Sullivan* v. *Boston Consol. Gas Co.*, 327 Mass. 163, 167 (1951). Thus there can be no negotiation between the parties as to rate.[6] The result of regulation this extensive is that it "takes that subject out of the realm of ordinary contract in some respects, and places it upon the rigidity of a quasi statutory enactment." *Haverhill Gas Co.* v. *Findlen*, 357 Mass. 417, 420 (1970), quoting from *New York, N.H., & H.R.R.* v. *York & Whitney Co.*, 215 Mass. at 40-41.

The purpose of tit. 4, § 8, is "to limit the power of public officials in making contracts . . . so as to unify the control of the city's commercial transaction . . . and guard against waste by departments in the government" (citations omitted). *Urban Transp., Inc.* v. *Mayor of Boston, supra* at 697. This purpose would not be served by applying the terms of tit. 4, § 8, to the obligation of the city to pay interest on overdue electric bills.

b. *Expenses in excess of appropriation.* Much the same analysis applies to the city's appropriation argument as applied to its contract argument, with much the same conclusion. Title 4, § 4, prohibits the expenditure by any official of an amount in excess of lawful appropriations by the city

---

[6] The city could no more negotiate with Edison about the interest charge than about the rate of the electricity. The authority of the department extends to "rates, prices *and* charges" (emphasis added). G. L. c. 164, § 94. The regulation does not bar negotiation between the parties regarding a payment plan whereby the city could more easily pay its bills on time. It does not permit Edison to excuse the city from interest if payment is late nonetheless.

council. The purpose of this requirement, like that of the contract requirement, is to prevent individual officials from incurring indebtedness for which the city has not provided and "to place the supervision and control of the expenditure of [public] funds upon the [city] through the medium of a budgetary system." *Baker* v. *Commonwealth,* 312 Mass. 490, 493 (1942). Like the contract requirement, this requirement is strictly enforced, even when the result is that the city is unjustly enriched. *Rich & Son Constr.* v. *Saugus,* 355 Mass. 304 (1969). *Dyer* v. *Boston,* 272 Mass. 265 (1930). Like the contract requirement the purposes of this requirement would not be served by applying it here. The city would have no control over the amount allocated for electricity in any event. As noted above, the price is nonnegotiable and it would be impossible for the city to predict how much electricity it would need for a year. Even if it were to appropriate an amount based on the previous year's usage, if the department were then to allow a rate increase, the appropriation would be obsolete. See *Boston Teachers Local 66* v. *School Comm. of Boston,* 386 Mass. 197 (1982) (inadequate appropriation does not bar subsequent raise in teachers' salaries).[7]

Furthermore, it is clear that a municipality cannot use an indebtedness statute to avoid paying its bills simply by refusing to appropriate sufficient funds. In *Salisbury Water Supply Co.* v. *Salisbury,* 341 Mass. 42 (1960), for example, the court refused to allow the town to escape its obligations under contracts with the water company because its appropriations were insufficient.

---

[7] The difficulty of making an appropriation for power consumption is illustrated in *District of Columbia* v. *Potomac Elec. Power Co.,* 402 A.2d 430, 436 (D.C. 1979). In that case, Congress had delegated to the Public Service Commission full authority to set and regulate utility rates. Congress had also set an upper limit on the funds that could be appropriated to pay for street lighting. The court said that the limit notwithstanding, Congress did not mean to restrict the commission's authority in any way and whatever rate it set would be the lawful rate which the district was obligated to pay, despite the fact that the disbursing officer could pay out only the funds appropriated by Congress.

We therefore conclude that tit. 4, §§ 4, 8, do not prohibit the expenditure of funds to pay for interest on overdue accounts incurred by the city in accordance with properly approved rates and charges.

3. *The period between February 19, 1975, and June 27, 1977.* Since it is clear that G. L. c. 164, § 94D, and DPU 18248 permit the collection of interest by Edison from the city on accounts overdue at least fifty-five days, it is equally clear that the city was liable for interest on accounts overdue at least twenty-five days after the interest proposal was approved in 1975 but before the 1977 amendment. The purpose of the statute was to extend the time the city had to pay its bills before incurring late charges. That makes no sense if the city were not already liable for interest charges.[8] The Legislature clearly assumed that DPU 18248 did apply to municipal consumers. The order itself does not suggest otherwise. It refers to the increased problem with overdue bills, particularly from commercial and industrial customers, but is applicable to all accounts receivable except those of residential customers, in accordance with G. L. c. 164, § 94D, as then amended.

The judge in the Superior Court found that the department did not have the statutory authority to require the city to pay interest, that being a matter of municipal finance. As is clear from the discussion above, however, the department has explicit statutory authority, both to set prices and to establish conditions of service. G. L. c. 164, § 94. See note 6, *supra.* If the department had the authority to decide how much the city should pay for the electricity itself, which is undisputed, it also had the authority to approve the late charges.

The partial judgment of the Superior Court in favor of Edison is affirmed and the case is remanded to the Superior Court for the entry of further judgment consistent with this opinion.

*So ordered.*

---

[8] It makes even less sense in light of the legislative history which indicates that one proposal was that cities and towns be exempted from the charges entirely. 1977 House Doc. No. 3120, at 1-2.