Leibensperger, Edward P., J.
The Town of Framing-ham (“Framingham”) files this lawsuit against Natick Mall, LLC (“Natick Mall”) alleging that Natick Mall owes $688,335.32 for use of Framingham’s sewer system. The amount sought is for the period July 1995 to December 2007, a period when Framingham mistakenly underbilled Natick Mall. Framingham admittedly failed to bill Natick Mall for the full amount of sewer usage until Framingham conducted an audit commencing in 2009. On April 6, 2010, Framingham notified Natick Mall that the town had underbilled for the period and was now issuing revised bills. Natick Mall, which had timely paid all sewer usage bills from the town, refused to pay the revised bills.
Framingham alleges a right to recover under G.L.c. 83, §16 (Count I), breach of contract (Count II), and quantum meruit/breach of implied contract (Count III). Natick Mall counterclaims alleging that Framingham’s non-uniform sewer fee rate structure violates G.L.c. 83, §16 (Counterclaim I), and that Framingham’s demand for payment constitutes an illegal tax in violation of the Massachusetts Constitution, Article 2, §7, as amended by Article 89 (Counterclaim II). Before the Court is Natick Mali’s Motion for Partial Summary Judgment with respect to all of Framingham’s claims insofar as they seek recoveiy for the revised sewer fees for the period prior to November 4, 2004, the date six years prior to the commencement of this action. Natick Mall asserts that such claims are barred by the statute of limitations. Also before the Court is Framingham’s Cross Motion for Summaiy Judgment with respect to Natick Mall’s counterclaims. After hearing and reviewing the parties’ submissions, Natick Mali’s Motion for Partial Summary Judgment is ALLOWED dismissing Framingham’s claims for the period prior to November 4, 2004. Framingham’s Cross Motion for Summaiy Judgment is also ALLOWED as a partial summaiy judgment for the same period.
BACKGROUND
The following facts, taken from the record, are not disputed.
In December 1995, Natick Mali’s predecessor in interest, General Growth Properties-Natick Limited Partnership (“General Growth”) purchased the Natick mall (the “mall”). In September 2006, General Growth was converted into Natick Mall, LLC. In late 2006, the mall underwent a large-scale renovation which resulted in the addition of over 300,000 square feet of retail space. The mail’s name was changed from Natick Mall to Natick Collection. The mall is located along the town line between the towns of Framingham and Natick. Between July 1995 and October 2007, the mall discharged sewage into the Framingham sewer system. The mall, however, received its water supply from Natick. Thus, between July 1995 and October 2007, Natick Mall received water bills from Natick and sewer bills from Framingham. In October 2007, the mall discontinued use of the Framingham sewer system and began using the Natick sewer system.
Between July 1995 and October2007, Framingham periodically issued invoices for sewer fees to Natick Mall under account numbers 1305107000 and 1305109000. Natick Mall paid the invoices in full when rendered.[1] Pursuant to the terms of its lease agreements with retailers, Natick Mall included the amount paid to Framingham for sewer fees in the “common area charges” billed annually to the mall’s tenants. As a consequence, Natick Mall was reimbursed by tenants for the sewer charges.
On Januaiy 23, 2009, Framingham hired P.L. Jones & Associates, P.C. (“P.L. Jones”) to test the *542 procedures used for billing out-of-town water and sewer customers between July 1, 1995 and June 2005. Framingham received P.L. Jones’s Independent Accountants’ Report (the “Report”) on October 9,2009. The Report revealed that Natick Mall’s sewer accounts were underbilled by $688,335.32. Because of the Report, the Framingham Department of Public Works (“DPW’) reviewed the underbilled accounts. The DPW concluded that (1) meter readers did not record accurate meter readings and its invoices did not reflect consistent billing practices regarding meter turnover, and (2) Framingham staff incorrectly billed the mall for ’’the consumption of each register head individually [the mall had two compound meters and each compound meter possessed two register heads] when the combined usage of the two register heads should have been used to determine the correct tier to bill the account." Both of these errors are attributed entirely to employees of Framingham. The town maintains that it did not discover the underbilling of Natick Mall until the independent audit was concluded in 2009.
On April 6, 2010, Framingham sent Natick Mall a letter demanding payment for sewer fees for the period between 1996 and October 2007, when the mall disconnected from Framingham’s sewer system. The letter states in pertinent part: “Account No. 13-05-107000 was underbilled approximately 98,000 units between 1996 and 2005, and account 13-05-109000 was overbilled approximately 6,000 units during the same time period.” The letter demands payment of $688,335.32 within thirty days for the “net discrepancy.” The town admits in the letter that the “underbilling is a result of incorrect entry of units of sewer usage, as well as placement of certain sewage charges in an inappropriate tier.” On November 4, 2010, Framingham commenced this lawsuit.
DISCUSSION I. Standard of Review
Summary judgment is appropriate where there are no genuine issues of material fact and the moving parly is entitled to judgment as a matter of law. Mass.R.Civ.R 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence negating an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond with evidence of specific facts establishing the existence of a genuine dispute. Pederson, 404 Mass. at 17. With respect to a statute of limitations defense, once defendant establishes that an action is commenced beyond the applicable time period allowed by the statute, the burden falls to plaintiff to prove facts that would take the case outside the bar of the statute of limitations. Silvestris v. Tantasqua Regional School District, 446 Mass. 756, 767 (2006). An adverse party cannot defeat a motion for summary judgment merely by resting on its pleadings and assertions of disputed facts, rather it must set forth specific facts with affidavits, deposition testimony, answers to interrogatories, or admissions on file showing that there is a genuine issue for trial. Mass.R.Civ.R. 56(c). When deciding a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party, but does not weigh evidence, assess credibility, or find facts. Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1982).
II. Natick Mall’s Motion for Partial Summary Judgment A. G.L.c. 83, §16
The first count of Framingham’s complaint seeks recovery of the underbilled sewer fees pursuant to G.L.c. 83, §16. That section permits a town to establish “just and equitable annual charges” for the use of common sewers “which shall be paid by every person who enters his particular sewer therein.”[2] To enforce that provision, §16A of c. 83 requires that the town give the user a due date for payment which shall require payment at least as often as annually. If the charges are not paid timely, the charges become a lien upon the real estate of the user. Pursuant to §16B, the lien continues until the amount owed is added as a tax under §16C, but if the amount owed is not added as a tax, the lien terminates after three years. In addition, the town may recover the amount owed “in an action of contract or otherwise.”
Natick Mall contends that Framingham’s claim pursuant to c. 83, § 16 for unpaid sewer fees for the period prior to November 4, 2004, is barred by the statute of limitations. Framingham counters that because c. 83, §16 does not contain a limitations period, municipalities may collect sewer fees “unfettered by the passage of time[.]” Alternatively, Framingham argues that the “discovery rule” saves it from the bar of any applicable statute of limitations.
The first step in the analysis is to determine the essence of Framingham’s claim under c. 83, §16. Once determined, the question of whether a statute of limitations applies to the claim must be addressed. If there is an applicable statute of limitations, the issues of when the statutory period begins and whether a “discovery rule” applies are presented.
1. What is the Nature of Framingham’s Claim?
As described, c. 83, §§16-16C authorizes municipalities to recover unpaid sewer fees in either of two ways. The first is by operation of law, on the day following the due date established by the town, when *543 a lien attaches against the user’s real estate. That lien continues in effect until the fee is added to or committed as a tax against the property. Alternatively, the municipality may initiate “an action in contract or otherwise” against the property owner or the tenant occupying the premises.
As it must, Framingham acknowledges that its ability to impose a lien against the mall and then to add the unpaid fees to a tax bill is non-existent because the mall is not located in Framingham and, thus, Natick Mall is not a taxpayer to Framingham. Therefore, Framingham’s only remedy is to collect the unpaid sewer fees owed under the statute in an action of contract. Consequently, Framingham’s claim under c. 83, §16 is in the nature of breach of contract.
2. Is There an Applicable Statute of Limitations?
No express statute of limitations is provided in c. 83, §§16-16C. Where a statute does not specify a period of limitations, courts must determine whether there is an indication in the statute or its legislative history evidencing an express or implied legislative intent that such actions are not time limited. Nantucket v. Beinecke, 379 Mass. 345, 348 (1979). Absent such an express legislative intent, courts must look “to the ‘gist of the action’ or the essential nature of the plaintiffs claim’ ” to determine which existing statute of limitations provision is most closely associated with the plaintiffs claim and then apply that limitations period. Id., quoting Hendrickson v. Sears, 365 Mass. 83, 85 (1974); see also Locator Servs. Group, Ltd. v. Treasurer & Receiver Gen., 443 Mass. 837, 859-60 (2005) (“Where no limitations period is statutorily provided, it is instructive to consider reasonable periods set fourth in similar statutes”).
Nothing has been brought to the Court’s attention by way of legislative history of G.L.c. 83, §§16-16C to show any indication that the Legislature intended to allow municipalities to sue for unpaid sewer fees without constriction by a statute of limitations. Nantucket, 379 Mass. at 348 (“If [the Legislature intended that actions not be time-limited], it would have been natural for the Legislature to express such an intention”). In fact, the text of §16B evidences a legislative intent to impose a time limit on a town’s right to recover unpaid sewer fees. While a lien may be imposed upon a customer for non-payment, the municipality must add or commit the sewer fees as a tax under §16C for the next fiscal year commencing after the inception of the lien, because the lien terminates on “October first of the third year following the year in which such charge becomes due.” G.L.c. 83, §16B. This language, terminating the lien imposed by operation of law after three years, is particularly relevant to an out-of-town user whose real estate is not subject to tax by the town. The Legislature expressly imposed a time limitation on the town’s remedy. Finally, §16B’s reference to an “action in contract or otherwise”[3] indicates the Legislature’s intention that a claim to recover unpaid sewer fees, other than through the lien process, is an action in contract. There is no reason to believe that such action in contract is different from any other action of contract that is constrained by a statute of limitations.
That Framingham’s c. 83, §16 claim is governed by the contract statute of limitations is further supported by the analogous statutory provision for collection of unpaid municipal taxes. Under G.L.c. 60, §35, unpaid local taxes “may be recovered in an action of contract or in any other appropriate action, suit or proceeding.” That section contains no statute of limitations. Nevertheless, the Supreme Judicial Court in City of Boston v. Gordon, 342 Mass. 586, 591 (1961), held that the contract statute of limitations, G.L.c. 260, §2, applied to the City’s claim.
Framingham contends that Decota v. Stoughton, 23 Mass.App.Ct. 618 (1987), provides support for not imposing a statute of limitations. The Court disagrees. The Town of Stoughton owed Decota $650,000 as a result of an eminent domain judgment. Before paying, however, the treasurer-collector examined the collector’s records which revealed that Decota owed $18,984.93 in delinquent real estate taxes. Pursuant to c. 60, §93, the treasurer-collector withheld that sum from the amount paid to Decota. Id. Decota filed suit seeking an execution for the amount withheld. Decota argued that Stoughton was “barred from setting off the amount of [the] real estate taxes because it would have been foreclosed from bringing an action of contract against [him pursuant to c. 60, §35]” to recover the delinquent taxes. Id. The Appeals Court concluded that if Stoughton had sought to recover the delinquent taxes “by an action in contract” the “six-year statute of limitations contained in G.L.c. 260, §2, [would] applfy].” Id. at 619-20. The Appeals Court held, however, that the set-off procedure as described in c. 60, §93 demonstrated a legislative intent that the set-off is “unaffected by any statute of limitations.” Id. at 620. Here, of course, Framingham is not proceeding under the set-off procedure of c. 60, §93. Decota, in fact, reinforces the conclusion that an action in contract brought to recover unpaid taxes is subject to the statute of limitations provided by G.L.c. 260, §2.[4]
Although not argued by Framingham in its opposition to partial summary judgment, the Court notes the following decisions by the Supreme Judicial Court and the Appeals Court. Haverhill Gas Company v. Findlen, 357 Mass. 417 (1970); Boston Gas Company v. City of Boston, 13 Mass.App.Ct. 408 (1982). Both cases concern mistaken underbilling by a regulated utility company. The Courts held that the obligations of the customers were governed by principles of public rate regulation. Thus, rather than apply principles of contract, the Courts enforced the statutory obligations of the customers to pay. The justification of the holdings turned on the extensive public regulation of utility *544 rates and the “binding effect of rates validly determined by a duly established public rate making authority.” Haverhill Gas Co., 357 Mass. at 421. In contrast, Framingham (while a public entity) did not proceed through a statutory public rate making authority in setting its sewer rates. The arrangement between the town and Natick Mall was more in the nature of a private contract, albeit under the structure of c. 83, §§16-16F. That structure allows Framingham to set “just and equitable annual charges” as it sees fit, including the discretion to charge residential and commercial users a different fee. Moreover, the record reflects that Framingham believes it may charge out-of-town users a different rate than in-town users. Clearly, the mandate to enforce the “inflexibility of rates fixed by public authority,” id. at 419, does not apply here with the same force. Framingham is providing sewer facilities in a proprietary capacity and selling the service to an out-of-town user. See, City of Snohomish v. Seattle-Snohomish Mill Co., Inc., 2003 WL 22073066, fn.2 (Wash.App. 2003) (unpublished decision) (municipalities that act in a proprietary capacity by selling water or sewer service are subject to statute of limitations defenses in an action seeking recovery for mistakenly underbilled amounts). For all of these reasons, the public utility cases, cited above, are distinguishable.
Because Framingham’s c. 83, §16 claim is contractual in nature it is governed by the six-year statute of limitations for actions in contract, c. 260, §2. Under that statute of limitations an action must “be commenced only within six years next after the cause of action accrues.”
3. When Did Framingham’s Cause of Action Accrue?
In general, a cause of action for breach of contract accrues at the time of the breach. Berkshire Mutual Insurance Co. v. Burbank, 422 Mass. 659, 661 (1996). The facts of this case—an underbilling over a period of 12 years—present the questions of (a) what constitutes a breach and (b) when did it occur.
The breach of contract alleged by Framingham is the failure by Natick Mall to pay the full amount of the sewer fees arising from the mall’s use of the sewer. The terms of the parties’ contract are governed by c. 83, §16. The .“annual charges” for the use of the sewer shall be paid by the user. The charges are set by the town for the use of the sewer, measured by the quantity of discharge by the user. The fact that, by mistake, Framingham’s bills during the relevant period did not reflect the full use by Natick Mall of the sewer system did not relieve Natick Mall of the obligation to pay for all of its use. Framingham suffered an injury each year that Natick Mall did not pay for all of its use of the sewer system. Framingham could have commenced an action to recover for the full amount of use. Accordingly, a breach of contract by Natick Mall occurred each and every time that it failed to pay the charges for 100% of its use. Each breach triggered a cause of action for Framingham. To the extent Framingham allowed more than six years to pass before asserting its cause of action, the cause of action is barred by c. 260, §2.
The analysis above is consistent with Massachusetts law regarding a mistaken payment made by one party to a contract to another. A mistaken payment, like an underbilling mistake, confers an unexpected benefit on the recipient. In City of New Bedford v. Lloyd Investment Assoc., Inc., 363 Mass. 112 (1973), the Supreme Judicial Court held that the recipient of the benefit by mistake is obligated “in equity and good conscience” to return the benefit. “Such duties have long been thought of as contractual although there is no agreement in fact by the defendant to repay, because . .. they could be enforced in the form of action called general assumpsit; the duties were and still are considered quasi contractual.” Id. at 118. Applied to the present case, Natick Mall was obligated, pursuant to the parties’ express and implied agreement, to pay for the benefit it received—full amount of its sewer use—regardless of Framingham’s mistaken billing.
The Court in City of New Bedford goes on to address when the cause of action held by the Ciiy for mistaken payment accrues. “Decisions of this Court settle the point that in actions to recover mistaken payments of money the cause accrues upon the receipt of payment without regard to when the mistake is discovered.” Id. at 119. As a result, the City of New Bedford was barred by the contract statute of limitations (G.L.c. 260, §2) from recovering the payments made by its mistake. Likewise, Framingham’s cause of action accrued at the time Natick Mall received the erroneous bills that allowed Natick Mall to pay for less sewer service than it had received.
Framingham contends, however, that the “discovery rule” saves it from the statute of limitations. It asserts, and the Court accepts for purposes of summary judgment, that it did not actually know that it had underbilled Natick Mall until October 2009.
The “discovery rule” is a doctrine developed by courts to toll the statute of limitations in certain circumstances. As an initial matter, application of the discovery rule to a breach of contract claim is limited. As described above, the general rule is that an action for breach of contract accrues at the time of the breach. This is true regardless of whether damages are ascertainable at the time of the breach or even if damages may not be sustained until a later time. DiGregorio v. Commonwealth, 10 Mass.App.Ct. 861, 862 (1980). This policy is also reflected in the Massachusetts Uniform Commercial Code, G.L.c. 106, §2-725 where it is stated that “[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.” Moreover, as noted in the City of New Bedford case, discussed supra, the general rule applies to a claim based on *545 payment made by mistake—the cause of action accrues at the time of the mistaken payment without regard to when the mistake is discovered.
In some instances, however, courts recognize a discovery rule for breach of contract cases where the breach is “inherently unknowable” to the aggrieved party. International Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc., 29 Mass.App.Ct. 215, 222 (1990). “The inherently unknowable wrong must be incapable of detection by the wronged party through the exercise of reasonable diligence.” Id., citing, Melrose Housing Auth. v. New Hampshire Ins. Co., 24 Mass.App.Ct. 207, 212 (1987), S.C., 402 Mass. 27 (1988). In the present case, the facts demonstrate, beyond dispute, that the breach of contract was not “inherently unknowable” to Framingham. First, Framingham did, in fact, discover the breach in 2009 when it elected to conduct an audit of its sewer accounts. Thus, the discrepancy was not unknowable and could have been discovered at any time the town chose to audit. Second, the underlying facts and data necessary to discover whether the town had un-derbilled Natick Mall were fully available to Framing-ham at all relevant times. The breach by Natick Mall was certainly “knowable” by Framingham at the date of each sewer bill and payment. The discovery rule, to the extent it applies at all, provides no safe harbor to Framingham to avoid the statute of limitations.[5] Framingham’s claim under c. 83, § 16 is barred by the statute of limitations with respect to the period of time billed by invoices received by Natick Mall prior to November 4, 2004.
B. Breach of Contract and Quantum Meruit/Breach of Implied Contract
Counts II and III of Framingham’s complaint allege breach of contract and quantum meruit/breach of implied contract. Natick Mall argues that these claims, to the extent they relate to sewer fees for the period prior to November 4, 2004, are also barred by the contract statute of limitations. Framingham does not contest the application of G.L.c. 260, §2 to the claims but contends, as noted above, that a discovery rule saves it from the operation of the statute. For the reasons stated above, the Court holds that Framing-ham is not entitled to the benefit of a discovery rule. Thus, Counts II and III are also barred by the statute of limitations as to invoices received prior to November 4, 2004.
III. Framingham’s Motion for Summary Judgment
Framingham contends that if a statute of limitations applies to its claims, Natick Mall’s counterclaims should also be dismissed to the extent the counterclaims challenge the sewer fees for the period prior to November 4, 2004. Natick Mall acknowledges that its counterclaims are subject to the six-year statute of limitations in G.L.c. 260, §2. It argues, however, that §36 of c. 260 allows its counterclaims to stand in full.
General Laws c. 260, §36 provides, in relevant part, that “a counterclaim arising out of the same transaction or occurrence that is the subject matter of plaintiffs claim, to the extent of plaintiffs claim, may be asserted without regard to the provisions of law relative to limitations of actions.” There is no question that Natick Mall’s counterclaims arise out of the same transactions that are the subject of Framingham’s claims. Thus, the counterclaims survive “to the extent” that Framingham’s claims survive. Framingham’s claims survive, as described above, only for invoices received by Natick Mall after November 4, 2004. Accordingly, Framingham is entitled to partial summary judgment on Natick Mall’s counterclaims with respect to invoices received by Natick Mall prior to that date.
ORDER
For the reasons stated above, Natick Mall, LLC’s Motion for Partial Summary Judgment is ALLOWED. The Town of Framingham’s Cross Motion for Summary Judgment is ALLOWED as a partial summary judgment dismissing so much of Natick Mall’s counterclaims that pertain to the period of time reflected in invoices received by it prior to November 4, 2004.

In the parties’ Statement of Undisputed Material Facts submitted pursuant to Rule 9A(b)(5), Framingham disputes that Natick Mall has paid the sewer fee invoices in full because it “has not yet had an opportunity to conduct discovery to verify the validity of the facts asserted.” Natick Mall supports its assertion of payment by the Affidavit of Adam Skrzypczak, its Operations Manager, dated January 27, 2011. A second affidavit of Mr. Skrzypczak, dated April 5, 2011, provides portions of Natick Mall’s general ledger to support the assertion that Natick Mall paid the invoices. Framingham, which certainly has the ability to review its own records to confirm the payments of invoices to Natick Mall, submits no affidavit disputing Natick Mall’s assertion of payment. Thus, there is no genuine dispute presented as to this issue.

The full text of c. 83, §16 is as follows: “The aldermen of any city or the sewer commissioners, selectmen or road commissioners of a town, may from time to time establish just and equitable annual charges for the use of common sewers and main drains and related stormwater facilities, which shall be paid by every person who enters his particular sewer therein. The money so received may be applied to the payment of the cost of maintenance and repairs of such sewers or of any debt contracted for sewer purposes. In establishing quarterly or annual charges for the use of main drains and related stormwater facilities, the city, town, or district may either charge a uniform fee for residential properties and a separate uniform fee for commercial properties or establish an annual charge based upon a uniform unit method; but, the charge shall be assessed in a fair and equitable manner. The annual charge shall be calculated to supplement other available funds as may be necessary to plan, construct, operate and maintain stormwater facilities and to conduct stormwater programs. Hie city, town or district may grant credits against the amount of the quarterly or annual charge to those property owners who maintain on-site iunctioning retention/detention basins or other filtration structures as approved by the stormwater utility, conservation commission, or other governmental entity with appropriate authority.”

Read in the context of c. 83, §§16-16C, the phrase “otherwise” relates to a municipality’s alternative remedy of a lien against the property or by the remedy of disconnecting the sewer service.

Mass. G.L.c. 260, §18, which expressly makes the statutes of limitations in Chapter 260 applicable to the Commonwealth, also applies to a municipality. City of Boston v. Nielson, 305 Mass. 429, 430-31 (1940).

Framingham argues that partial summary judgment should not be granted because, pursuant to Mass.R.Civ.P. 56(f), it has requested the opportunity to take discovery. Framingham submits the Affidavit of Christopher L. Brown in support. The discovery sought, however, relates entirely to Natick Mali’s knowledge or lack thereof regarding the billing discrepancy. Such information is irrelevant. The pertinent issue on the discovery rule is the town’s ability to discover the discrepancy.